## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NATIONAL SHOOTING SPORTS
FOUNDATION, INC.,

*Plaintiff*,

v.

MATTHEW J. PLATKIN, Attorney
General of the State of New Jersey,

*Defendant.*

Civil Action No.
3:22-cv-06646-ZNQ-TJB

## BRIEF OF GUN VIOLENCE PREVENTION GROUPS
## AS AMICI CURIAE IN SUPPORT OF DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENTS.................................................. vi

INTERESTS OF AMICI CURIAE ....................................................1

ARGUMENT ........................................................................1

   I.  PLCAA Does Not Preempt All Civil Claims Against Gun Industry
     Members...........................................................................3

      A. The New Jersey Statute Authorizes Certain Claims That Are
         Entirely Outside PLCAA's Scope ....................................5

      B. PLCAA's Predicate Exception Expressly Permits Claims
         Based Upon Violations of State Statutes Like The New Jersey
         Statute ........................................................6

           1.  Statutes, Like Section 58-35, That Impose Flexible
               Standards of Conduct Can Be PLCAA Predicate
               Statutes ..............................................9

           2.  PLCAA Permits Application of Reasonableness and
               Other Flexible Liability Standards, Such as Section 58-
               35's, to Gun Industry Members...........................11

   II.  Courts Consider Claims Against Both In-State and Out-of-State Gun
      Industry Defendants, and Are Well-Equipped to Protect the Latter ........14

   III. NSSF's Hyperbolic Assertions Regarding the Financial Impact of
      Section 58-35 Are Vastly Overstated and Contradicted by Publicly
      Available Information ...........................................17

CONCLUSION .................................................20

# TABLE OF AUTHORITIES

## Cases

*Apolinar v. Polymer80, Inc.,*
Case No. 21STCV29196, 2022 Cal. Super. LEXIS 2591 (Cal. Super. Ct.
Los Angeles Co. Feb. 2, 2022)..........................................................................17

*Brady v. Walmart, Inc.,*
No. 8:21-cv-1412, 2022 WL 2987078 (D. Md. 2022) .............................4, 13, 15

*ChemSol LLC v. City of Sibley,*
386 F. Supp. 3d 1000 (N.D. Iowa 2019) ...........................................................13

*Chiapperini v. Gander Mountain Co., Inc.,*
48 Misc.3d 865 (N.Y. Sup. Ct. Monroe Co. 2014) ...........................................15

*City of Gary v. Smith & Wesson Corp.,*
126 N.E.3d 813 (Ind. Ct. App. 2019) ................................................................10

*City of New York v. Beretta U.S.A. Corp.,*
524 F.3d 384 (2d Cir. 2008) ..........................................................................9, 10

*Columbus v. Kim,*
886 N.E.2d 217 (Ohio 2008) .............................................................................13

*Corporan v. Wal-Mart Stores East, LP,*
Case No. 16-2305, 2016 WL 3881341 (D. Kan. Jul. 18, 2016)..................13, 16

*Crawford v. Jimenez Arms, Inc.,*
Case No. 1916-CV17245 (Mo. Circuit Ct. Jackson Cnty. Feb. 3, 2020)...........16

*Estate of Kim v. Coxe,*
295 P.3d 380 (Alaska 2013) ................................................................................3

*Goldstein v. Earnest,*
Case No. 37-2020-00016638 (Cal. Super. Ct. San Diego Co. Jul. 2, 2021) 11, 17

*Green v. Kyung Chang Indus. USA, Inc.,*
No. A-21-838762-C (Nev. Dist. Ct. Clark. Cnty. Jan. 31, 2022)........................6

*King v. Klocek,*
187 A.D.3d 1614 (N.Y. App. Dev. 4th Dep't 2020) .....................................4, 12

*Orlando Sports Stadium, Inc. v. State,*
262 So. 2d 881 (Fla. 1972) ................................................................................13

*Prescott v. Slide Fire Solutions, LP,*
410 F.Supp.3d 1123 (D. Nev. 2019) ............................................................10, 12

*Smith & Wesson Corp. v. City of Gary*,
   875 N.E.2d 422 (Ind. Ct. App. 2007) ................................................................4

*Soto v. Bushmaster Firearms Internat'l, LLC*,
   202 A.3d 262 (Conn. 2019) .......................................................................4, 10

*State v. Sharkey*,
   497 A.2d 1291 (N.J. Super. Ct. App. Div. 1985) .............................................14

*Tretta v. Osman*,
   Case No. 20STCV48910 (Cal. Sup. Ct. L.A. Cnty. Jun. 28, 2021) ....................5

*U.S. v. Salerno*,
   481 U.S. 739 (1987) .........................................................................................2

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) .....................................................................................1, 15

*Williams v. Beemiller, Inc.*,
   100 A.D.3d 143 (N.Y. App. Div. 4th Dep't 2012) ............................................4

*Williams v. Beemiller, Inc.*,
   103 A.D.3d 1191 (N.Y. App. Div. 4th Dep't 2013) .....................................4, 12

*Williams v. Beemiller, Inc.*,
   130 N.E.3d 833 (N.Y. 2019) ...........................................................................16

*Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*,
   346 A.2d 269 (Pa. 1975) ................................................................................14

**Statutes**

15 U.S.C. § 7901 ..............................................................................................7

15 U.S.C. § 7902 ..............................................................................................3

15 U.S.C. § 7903(2)...........................................................................................5

15 U.S.C. § 7903(4)...........................................................................................6

15 U.S.C. § 7903(5)..................................................................................3, 4, 7, 8

15 U.S.C. § 7903(6)...........................................................................................5

18 U.S.C. § 922(g)............................................................................................8

18 U.S.C. § 922(n)............................................................................................8

Cal. Bus. & Prof. Code § 17200......................................................................11

Conn. Gen. Stat. § 42-110b ............................................................................10

iv

Ind. Code § 32-30-6-6 ...........................................................................10

N.J. Stat. Ann. § 2C:58-33 .....................................................................1

N.J. Stat. Ann. § 2C:58-34 ...........................................................5, 6, 15

N.J. Stat. Ann. § 2C:58-35 .....................................................................1

Nev. Rev. Stat. 598.0915(5) .................................................................10

**Other Authorities**

151 Cong. Rec. S 9059 ...........................................................................7

DOJ, *Gun Violence Reduction: National Integrated Firearms Violence Reduction Strategy* (Jan. 18, 2001) .................................................12

Jesse Barron, *How America's Oldest Gun Maker Went Bankrupt: A Financial Engineering Mystery*, N.Y. Times (May 1, 2019)................................18

NSSF, *Firearm and Ammunition Industry Economic Impact Report* (2022)......3, 18

Ramsin Canon, *Instead of Criminalizing Individuals, Let's Take Down the Gun Industry*, Truthout (Aug. 9, 2019) .............................................20

Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its Unity*, Wash. Post (Mar. 18, 2000).......................................................20

Smith & Wesson, *2022 Annual Report* .................................................19

Smith & Wesson, *Form 10-Q for the quarterly period ended October 31, 2022* ...........................................................................................18, 19

Steven Spearie, *Gun Dealer: New Illinois Law Will 'Put a Hammer' on Us*, State J.-Reg. (July 22, 2019, 9:00 AM)...........................................20

Sturm, Ruger & Co., Inc., *Form 10-Q: Quarterly report for the quarterly period ended October 1, 2022* ..........................................................19

## CORPORATE DISCLOSURE STATEMENTS

Brady is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

Everytown for Gun Safety (formally, Everytown for Gun Safety Action Fund) is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

Giffords Law Center to Prevent Gun Violence is a nonprofit organization. It has no parent corporations. It has no stock, and therefore no publicly held company owns 10% or more of its stock.

## INTERESTS OF AMICI CURIAE

Amici Everytown for Gun Safety, Brady, and Giffords Law Center to Prevent Gun Violence are national gun violence prevention organizations that have extensive experience successfully litigating cases under the Protection of Lawful Commerce in Arms Act ("PLCAA"). Amici submit this brief in support of Defendant's opposition to Plaintiff's motion for a preliminary injunction in order to provide context regarding civil litigation against gun industry defendants and the application of PLCAA by courts across the country.

## ARGUMENT

Plaintiff National Shooting Sports Foundation ("NSSF") has asserted a facial challenge to New Jersey Assembly Bill 1765, which was enacted in July 2022 and codified at N.J. Stat. Ann. §§ 2C:58-33 *et seq*. ("Section 58-35" or "the New Jersey Statute"). Section 58-35 subjects gun industry actors to civil liability for creating or contributing to a public nuisance, as defined by the statute. It authorizes Defendant, the New Jersey Attorney General, to investigate and seek relief against gun industry members that violate the statute. N.J. Stat. Ann. § 2C:58-35(3).

Generally, "a facial challenge must fail where the statute has a 'plainly legitimate sweep.'" *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citations omitted); *see also United States v. Salerno*, 481 U.S. 739,

745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). NSSF invites this Court to invalidate Section 58-35 before Defendant has even brought a civil claim pursuant to it and without acknowledging that civil litigation against gun industry actors is far from unprecedented. Amici, three organizations with significant experience litigating civil cases against gun industry actors, address several ways in which such litigation sheds light on the "plainly legitimate sweep" of the New Jersey Statute.

First, as litigation across the country has shown, PLCAA does not preempt all civil liability claims against gun industry defendants, and it would not preempt all claims arising under Section 58-35. *Contra* NSSF Br. at 3-12. In fact, PLCAA expressly contemplates state legislative regulation of the gun industry, and plaintiffs throughout the country have successfully invoked PLCAA's "predicate exception" based on gun industry defendants' alleged violations of statutes that share features of Section 58-35. *See infra* at Part I(B). Second, despite NSSF's alarm about the statute's purported extraterritorial reach (NSSF Br. at 12-15), courts have regularly demonstrated their capacity to consider civil claims against out-of-state gun industry defendants while also protecting the due process rights of those defendants.

Finally, Amici briefly address NSSF's unsubstantiated and hyperbolic assertion that Defendant's future enforcement of Section 58-35 will bankrupt its

members. NSSF Br. at 25-26. As demonstrated herein, gun industry actors have long faced civil litigation arising from gun violence caused, at least in part, by their wrongful actions. Such litigation has not resulted in financial ruin for the industry. To the contrary, NSSF recently boasted that the gun industry is stable and financially sound.[1] NSSF offers no meaningful evidence to suggest that future litigation pursuant to Section 58-35 will cripple the industry.

For the reasons stated herein, Amici support Defendant's opposition to NSSF's motion for a preliminary injunction.

## I.   PLCAA Does Not Preempt All Civil Claims Against Gun Industry Members

Enacted in 2005, PLCAA requires dismissal of a "qualified civil liability action" that is asserted against a defendant eligible for PLCAA protection, unless otherwise exempted. 15 U.S.C. §§ 7902, 7903(5)(A)(i)-(vi).[2] A civil claim against a PLCAA-protected defendant constitutes a "qualified civil liability action" where it

---

[1]   *See* NSSF, *Firearm and Ammunition Industry Economic Impact Report* (2022) (cited by NSSF Br. at 22), https://www.nssf.org/wp-content/uploads/2022/03/2022-Firearm-Ammunition-Industry-Economic-Impact.pdf.

[2]   As explained herein, PLCAA preempts certain civil claims. But nothing in PLCAA's text preempts states' ability to statutorily regulate the marketing and sale of guns through provisions such as Section 58-35. *See Estate of Kim v. Coxe*, 295 P.3d 380, 389 (Alaska 2013) ("Although expressly preempting conflicting state tort law, the PLCAA *allows* Alaska's legislature to create liability for harms proximately caused by knowing violations of statutes regulating firearm sales and marketing." (emphasis in original)).

arises from misuse of the defendant's firearms or ammunition product by a third party. *See id*. § 7903(5)(A) (defining a "qualified civil liability action."); *see also Williams v. Beemiller*, *Inc*., 100 A.D.3d 143, 147 (N.Y. App. Div. 4th Dep't 2012), *amended by* 103 A.D.3d 1191 (N.Y. App. Div. 4th Dep't 2013). PLCAA thus can protect gun industry actors from certain tort claims arising from gun violence.

PLCAA does not, however, shield gun industry actors from every civil claim arising from gun violence. First, some claims fall outside PLCAA's scope. Second, the statute includes six exceptions to its protection. *See* 15 U.S.C. § 7903(5)(A)(i)-(vi). As described in more detail *infra*, at Part I(B), one exception to PLCAA protection, known as the "predicate exception," applies when a gun industry defendant "knowingly violate[s] a State or Federal statute applicable to the sale or marketing of the [firearm or ammunition] product, and the violation was a proximate cause of the harm for which relief is sought[.]" *Id*. § 7903(5)(A)(iii); *see also Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422, 429-30 (Ind. Ct. App. 2007).

In the years since PLCAA's enactment, plaintiffs across the country have relied on its exceptions to successfully assert civil liability claims against gun industry defendants. *See, e.g.*, *Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262 (Conn. 2019); *King v. Klocek*, 187 A.D.3d 1614 (N.Y. App. Div. 4th Dep't 2020); *Brady v. Walmart, Inc.*, No. 8:21-cv-1412, 2022 WL 2987078 (D. Md. 2022). There is every reason to expect that the same will be true for claims brought pursuant

to Section 58-35. In this respect, Plaintiff's assertion that Section 58-35 "authorizes exactly what the PLCAA prohibits" (NSSF Br. at 2) is belied by the fact that lawsuits against gun industry members have proceeded despite PLCAA.

### A. The New Jersey Statute Authorizes Certain Claims that Are Entirely Outside PLCAA's Scope

Some potential claims authorized by Section 58-35 will not implicate PLCAA at all. As relevant here, PLCAA's statutory text limits the scope of preempted "qualified civil liability actions" in two notable ways. First, while federally licensed firearms manufacturers, distributors, importers, and dealers can receive PLCAA protection, PLCAA does *not* preempt civil liability claims against manufacturers, distributors, or dealers of firearms or firearm components *who do not have a federal firearms license*. *See* 15 U.S.C. § 7903(2), (6) (defining the "manufacturers" and "sellers" as entities that are licensed under the federal Gun Control Act). The text of Section 58-35, by contrast, encompasses both licensed and unlicensed companies. *See* N.J. Stat. Ann. § 2C:58-34 (defining "gun industry member").

This divergence is meaningful because many makers and sellers of ghost guns (unserialized firearms) believe that their products do not qualify as firearms under federal law and therefore do not seek a federal firearms license. *See, e.g.*, *Tretta v. Osman*, No. 20STCV48910, slip op. at *2,*5 (Cal. Sup. Ct. L.A. Cnty. June 28, 2021) (denying defendant ghost gun seller's motion to dismiss because plaintiff had alleged that the seller did not have a federal firearms license and was therefore

ineligible for PLCAA protection.).[3] Thus, if Defendant asserts a Section 58-35 claim against, for instance, an *unlicensed* ghost gun seller, that claim would not constitute a "qualified civil liability action" preempted by PLCAA.

Second, PLCAA does not prohibit claims arising from misuse of firearms accessories. *See* 15 U.S.C. § 7903(4) ("qualified products" covered by PLCAA include firearms, ammunition, and components of each, but not firearms accessories); *see also Green v. Kyung Chang Indus. USA, Inc.*, No. A-21-838762-C, slip op. at *1 (Nev. Dist. Ct. Clark Cnty. Jan. 31, 2022) (no PLCAA preemption for claims against large-capacity magazine manufacturer because magazine was not a "qualified product").[4] The text of Section 58-35, however, expressly encompasses firearms accessories. *See* N.J. Stat. Ann. § 2C:58-34 (defining "gun-related product"). Thus, Defendant can assert Section 58-35 claims arising from firearms accessories without encountering PLCAA.

### B. PLCAA's Predicate Exception Expressly Permits Claims Based Upon Violations of State Statutes Like the New Jersey Statute

Even where PLCAA is implicated, one of PLCAA's six exceptions may be

---

[3]     Slip opinion available at https://everytownlaw.org/wp-content/uploads/sites/5/2021/06/2021.06.28_Minute_Order_MINUTE_ORDER_HEARING_ON_DEMURRER_WIT.pdf.

[4]     Slip opinion available at https://brady-static.s3.amazonaws.com/GREEN-V.-KYUNG-CHANG-INDUSTRY-USA-INC-dayton-ohio-mass-shooting.pdf. The case is currently on appeal before the Nevada Supreme Court, at case number 84844.

applicable to a particular lawsuit. *See* 15 U.S.C. § 7903(5)(A). The predicate

exception is particularly relevant here. *Id*. § 7903(5)(A)(iii). The predicate exception

reflects PLCAA's statutory purpose: As indicated in PLCAA's preamble, the

statute's sponsors intended to preclude what they perceived to be unwarranted

*judicial* expansion of liability standards applicable to the firearms industry while

preserving the state and federal *legislative* power to regulate the industry. *See, e.g.*,

15 U.S.C. § 7901(a)(7) (stating that civil actions against gun industry members "do

not represent a bona fide expansion of the common law" and noting that such actions

had never been contemplated "by the legislatures of the several States."); *id*. §

7901(a)(8) (stating that existing lawsuits "attempt to use the judicial branch to

circumvent the Legislative branch of government"). Comments by PLCAA's

sponsors during Congressional debate also make clear that PLCAA was not intended

to cut off the ability of state legislatures to pass gun laws:

- Sen. Craig: "Advocates of gun control are trying to usurp State power by circumventing the legislative process through judgments and judicial decrees. Allowing activist judges to legislate from the bench will destroy state sovereignty. This bill will protect it." 151 Cong. Rec. S 9059 (daily ed. July 27, 2005) (statement of Sen. Craig).

- Sen. Coburn: "These lawsuits are part of an anti-gun activist effort to make an end run around the legislative system . . . . When you can't pass it in the legislature, you get an activist judge to get done what you wanted to do in the first place[.]" *Id.* (statement of Sen. Coburn).

- Sen. Hatch: "These abusive gun liability actions usurp the authority of the Congress and of State legislators." *Id.* (statement of Sen. Hatch).

Far from being preempted by PLCAA, Section 58-35 embodies exactly the sort of power that PLCAA's sponsors said should be left to state legislatures.

PLCAA's predicate exception requires a plaintiff to sufficiently allege that the defendant "knowingly violate[d] a State or Federal statute" and proximately caused the plaintiff's injury *in addition to* the underlying statutory violation. *See* 15 U.S.C. § 7903(5)(A)(iii). Contrary to NSSF's assertion (NSSF Br. at 9-12), the underlying predicate statute need not *itself* impose knowledge and proximate causation elements on gun industry actors. In fact, PLCAA itself states, as an illustrative example, that the predicate exception is satisfied in any case in which a gun company aided and abetted disposal of a firearm or ammunition product "knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18." 15 U.S.C. § 7903(5)(A)(iii)(II). Neither of the two predicate statutes identified in that textual example—18 U.S.C. §§ 922(g) and (n)—itself includes express knowledge and proximate causation requirements.

Thus, if Defendant asserted statutory Section 58-35 claims against gun industry members eligible for PLCAA protection, he would need to establish a violation of the predicate statute—which could be Section 58-35 or another statute that the defendant concurrently violated—*and* the elements set forth in PLCAA's predicate exception. But even if PLCAA may preempt *some* claims arising under a

state statute, that is not reason to discard the entire statute, particularly where Congress expressly contemplated PLCAA's consistency with state legislative regulation of the gun industry.

### 1. Statutes, Like Section 58-35, that Impose Flexible Standards of Conduct Can Be PLCAA Predicate Statutes

NSSF contends that Section 58-35 cannot serve as a PLCAA predicate statute because its requirements are not sufficiently concrete. *See* NSSF Br. at 5-8. In addition to having no support in PLCAA's text or legislative history, this claim is belied by decisions across the country that have applied the predicate exception.

Following PLCAA's enactment, the U.S. Court of Appeals for the Second Circuit issued an instructive framework for identifying predicate statutes. It stated that a predicate statute under PLCAA must fall into one of three categories:

1. Statutes "that expressly regulate firearms;"

2. Statutes "that courts have applied to the sale and marketing of firearms;" or

3. Statutes "that do not expressly regulate firearms but that clearly can be said to implicate the purchase and sale of firearms."

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403-04 (2d Cir. 2008).[5]

Section 58-35, which expressly regulates firearms, clearly fits within this

---

[5]     Although NSSF cites the *Beretta* decision throughout its brief (*see, e.g.*, NSSF Br. at 5, 7-8), it does not discuss *Beretta*'s clear standard for predicate statutes.

framework.[6]

Since *Beretta*, courts around the country have identified a range of flexible statutes that qualify as predicates. *See Soto*, 202 A.3d at 274 n.9, 305-06 (adopting the reasoning of *Beretta* and holding that the Connecticut Unfair Trade Practices Act (CUTPA) constitutes a PLCAA predicate statute),[7] *cert. denied*, 140 S. Ct. 513 (2019); *City of Gary v. Smith & Wesson Corp.*, 126 N.E.3d 813, 832-33 (Ind. Ct. App. 2019) (reaffirming the court's earlier holding that plaintiff-municipality sufficiently invoked the predicate exception based on gun manufacturers' alleged violations of Indiana's general public nuisance statute)[8]; *Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1137-39 (D. Nev. 2019) (finding that Nevada's Deceptive Trade Practices Act (DTPA) qualifies as a predicate statute)[9]; *Goldstein*

---

[6]     The Second Circuit further held in *Beretta* that New York's generally applicable criminal public nuisance statute did not qualify as a predicate statute because it did not fall within any of the three predicate statute categories. *Beretta*, 524 F.3d at 400, 403-04. The Second Circuit did not take issue with, or even address, the flexibility of the criminal nuisance statute.

[7]     CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b.

[8]     Indiana's public nuisance statute provides: "Whatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." Ind. Code § 32-30-6-6.

[9]     Nevada's DTPA prohibits knowingly making a "false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith." Nev. Rev. Stat. 598.0915(5).

*v. Earnest*, No. 37-2020-00016638, slip op. at *3-5 (Cal. Super. Ct. San Diego Cnty. July 2, 2021) (holding that California's Unfair Competition Law (CUCL) constitutes a predicate statute and granting plaintiffs leave to amend their standing allegations).[10]

So too with Section 58-35, which applies a flexible public nuisance standard to gun industry members. There is every reason to expect that it could serve as a PLCAA predicate statute in cases where Defendant can sufficiently plead (i) a violation of Section 58-35 and (ii) that the defendant "knowingly violated" the statute and proximately caused actionable harm (as required by PLCAA).

### 2. PLCAA Permits Application of Reasonableness and Other Flexible Liability Standards, Such As Section 58-35's, to Gun Industry Members

NSSF contends that PLCAA shields gun industry companies from all liability claims involving "nebulous state law 'reasonableness' standards." NSSF Br. at 1-2; *see also id.* at 21-23. But civil liability claims incorporating reasonableness or other flexible liability standards are not unduly nebulous, novel, or entirely prohibited by

---

[10]    The CUCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. The slip opinion is available at https://brady-static.s3.amazonaws.com/Minute-Order-7-2-21-S0499865.PDF.

PLCAA.[11] Indeed, as litigation across the country has shown, PLCAA permits certain common law claims that involve a reasonableness standard of liability.

First, in a number of cases, plaintiffs that have successfully invoked the predicate exception have proceeded with common law negligence and public nuisance claims against gun industry members. For example, in *Prescott v. Slide Fire*, a case arising from the 2017 mass shooting in Las Vegas, the District of Nevada permitted the plaintiffs to proceed on their common law negligence claim against the manufacturer of the shooter's bump stock after determining that the plaintiffs' allegations satisfied PLCAA's predicate exception. 410 F. Supp. 3d at 1137-43. Similarly, New York's Appellate Division has permitted negligence and public nuisance claims to proceed against gun industry companies where plaintiffs have sufficiently alleged predicate statutory violations. *See King v. Klocek*, 187 A.D.3d at 1615; *Williams v. Beemiller, Inc.*, 103 A.D.3d 1191 1191 (N.Y. App. Div. 4th Dep't 2013). In addition, courts in multiple jurisdictions have declined to dismiss

---

[11]   Further negating the idea that Section 58-35 creates an impossible-to-understand standard, the U.S. Department of Justice listed specific, reasonable safeguards that industry actors should pursue to prevent the diversion of firearms. Those actions, which were disseminated in 2001, include steps such as "identify[ing] and refus[ing] to supply dealers and distributors that have a pattern of selling guns to criminals and straw purchasers" and developing a "training program for dealers and distributors covering compliance with firearms laws, identifying straw purchase scenarios and securing inventory." DOJ, *Gun Violence Reduction: National Integrated Firearms Violence Reduction Strategy*, 29-30 (Jan. 18, 2001). Statutes like Section 58-35, in referencing reasonable safeguards, thus apply a standard with known contours.

negligence claims in cases where statutory violations are alleged against Walmart, arising from the company's firearms sales. *See Brady*, 2022 WL 2987078, at *6-10, *13-16; *Corporan v. Wal-Mart Stores East, LP*, No. 16-2305, 2016 WL 3881341, at *2-6 (D. Kan. July 18, 2016) (concluding that, with anticipated amendments, plaintiff's negligence claims arising from company's gun sale could survive a motion to dismiss). In short, PLCAA does not categorically prohibit the application of reasonableness standards to gun industry companies, as NSSF suggests.

Second, flexible liability standards—such as those codified in Section 58-35—are a well-established feature of statutory law and apply to actors in a variety of contexts. For instance, courts have consistently upheld public nuisance statutes containing flexible liability standards against vagueness challenges. *See, e.g.*, *City of Columbus v. Kim*, 886 N.E.2d 217, 218-19 (Ohio 2008) (upholding, against vagueness challenge, city ordinance prohibiting the harboring of "unreasonably loud or disturbing" animals); *Orlando Sports Stadium, Inc. v. Florida*, 262 So. 2d 881, 884 (Fla. 1972) (rejecting vagueness challenge to public nuisance provisions that prohibited the use and maintenance of buildings and other structures for unlawful drug use or for the violation of "any law of the state"); *ChemSol LLC v. City of Sibley*, 386 F. Supp. 3d 1000, 1009, 1019-23 (N.D. Iowa 2019) (upholding anti-odor public nuisance provision that prohibited commercial activity generating "unreasonably noxious exhalations, unreasonably offensive smells, or other

unreasonable annoyances"); *cf. New Jersey v. Sharkey*, 497 A.2d 1291, 1295 (N.J. Super. Ct. App. Div. 1985) (upholding provision criminalizing distribution of "look-alike" drugs and stating: "That the Legislature chose not to set forth a detailed listing of all proscribed activity. . ., but instead utilized a general approach in describing the illegal conduct, does not render the legislation void for vagueness."). Courts have similarly approved and applied statutory reasonableness standards in many other contexts. *See, e.g.*, *Wm. Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 292 (Pa. 1975) (upholding, as a constitutional delegation of power, a statutory provision authorizing state courts to invalidate local tax ordinances that they determine to be "excessive or unreasonable" and stating: "Many standards in the law are no more definite than a requirement of 'reasonableness.'").

Section 58-35—a public nuisance statute that requires reasonable conduct from gun industry members—features a level of statutory flexibility that has long been endorsed by courts. And, as detailed above, the statute authorizes plainly valid claims that should be allowed to proceed consistent with PLCAA.

## II.   Courts Consider Claims Against Both In-State and Out-of-State Gun Industry Defendants, and Are Well-Equipped to Protect the Latter

NSSF further contends that enjoining Section 58-35 is necessary to protect gun industry members with minimal connections to New Jersey who are, nevertheless, purportedly exposed to liability. NSSF Br. at 12-15. That argument ignores the statute's applicability to in-state transactions, as well as courts' role in

ensuring that personal jurisdiction exists in cases involving out-of-state conduct.

First, NSSF raises the specter of extraterritorial reach without acknowledging the "plainly legitimate sweep" of Section 58-35's authorization of claims arising from in-state transactions. *Wash. State Grange*, 552 U.S. at 449. Courts across the country can and do hear claims against gun companies, particularly gun dealers, arising from transactions that occurred in the forum state. *See, e.g.*, *Brady*, 2022 WL 2987078, at *1-2, *17 (permitting claims to proceed against Walmart arising from company's sale of handgun in the forum state); *Chiapperini v. Gander Mountain Co., Inc.*, 48 Misc.3d 865 (N.Y. Sup. Ct. Monroe Cnty. 2014) (denying motion to dismiss claims arising from Gander Mountain's sale of guns in the forum state). Section 58-35 likewise reaches retail industry conduct that is likely to occur in-state. *See* N.J. Stat. Ann. §§ 2C:58-34 (defining "gun industry member" to include persons who sell gun-related products and requiring the exercise of reasonable controls in the sale of such products).

Second, courts are capable of adjudicating claims against gun industry defendants whose allegedly wrongful conduct occurs out of state, while also protecting the due process rights of such defendants. NSSF does not contend that courts are ill-equipped to do so. In fact, courts can—and often do—enforce personal jurisdiction limits in cases against out-of-state gun industry members. *Compare Crawford v. Jimenez Arms, Inc.*, No. 1916-CV17245, slip op. at *1-3 (Mo. Cir. Ct.

15

Jackson Cnty. Feb. 3, 2020) (denying out-of-state manufacturers' motion to dismiss for lack of personal jurisdiction where plaintiff alleged that manufacturer assisted a Missouri-based gun trafficker in establishing a gun trafficking ring in Missouri),[12] *with Williams v. Beemiller, Inc.*, 130 N.E.3d 833, 835 (N.Y. 2019) (affirming dismissal of claims against Ohio gun dealer arising from shooting in New York due to lack of personal jurisdiction). Consistent with established precedent, courts hearing Section 58-35 claims will require a sufficient showing of personal jurisdiction over gun industry defendants. For instance, a New Jersey court considering the hypothetical Section 58-35 claim posited by NSSF against a Texas-based manufacturer and Arkansas-based dealer (NSSF Br. at 13) would undoubtedly consider whether such defendants have the requisite contacts with New Jersey to support personal jurisdiction.

More generally, where personal jurisdiction is present, it is not unusual for courts to adjudicate claims against gun industry companies arising from conduct that occurred partially or fully out of state but generated effects in state. *See, e.g.*, *Corporan*, 2016 WL 3881341, at *1 (federal court in Kansas hearing claims arising from shooting in Kansas perpetrated with gun sold by defendant Wal-Mart in Missouri); *Apolinar v. Polymer80, Inc.*, No. 21STCV29196, 2022 Cal. Super.

---

[12]     Slip     opinion     available     at     https://everytownlaw.org/wp-content/uploads/sites/5/2020/06/crawford-order-denying-defs-mtd-for-lack-of-personal-jurisdiction.pdf.

LEXIS 2591, at *1-2 (Cal. Super. Ct. L.A. Cnty. Feb. 2, 2022) (overruling demurrer of Nevada manufacturer that shipped ghost gun kits to California consumers); *Goldstein*, No. 37-2020-00016638, slip op. at *2-8 (considering claims against Massachusetts-based manufacturer Smith & Wesson arising from California shooting perpetrated with Smith & Wesson rifle purchased in California).[13] So, too, courts hearing future Section 58-35 claims against out-of-state defendants will be capable of adjudicating such claims while protecting the due process rights of such defendants.

### III.   NSSF's Hyperbolic Assertions Regarding the Financial Impact of Section 58-35 Are Vastly Overstated and Contradicted by Publicly Available Information

NSSF insists, without meaningful support, that the costs associated with claims asserted pursuant to the New Jersey Statute could be "bankruptcy-inducing" for its members. NSSF Br. at 25-26. But as detailed *supra*, gun industry actors have faced (and continue to face) litigation across the country, consistent with PLCAA. And NSSF neglects to mention that a law with provisions similar to the New Jersey Statute has been in effect in New York since July 2021. *See NSSF v. James*, No. 1:21-cv-1348, ECF No. 46 (N.D.N.Y. May 25, 2022) (rejecting preemption and constitutional challenges by NSSF and others to analogous New York law), *appeal*

---

[13]    Slip opinion available at https://brady-static.s3.amazonaws.com/Minute-Order-7-2-21-S0499865.PDF.

*docketed* No. 22-1374 (2d Cir. June 24, 2022).

Litigation brought under New York's public nuisance statute and other predicate statutes has not generated mass bankruptcies across the industry.[14] On the contrary, NSSF recently published a report attesting to the financial stability and expansion of the gun industry:

> The economic growth America's firearm and ammunition industry has experienced in recent years has been nothing short of remarkable and has been driven by an unprecedented number of Americans choosing to exercise their fundamental right to keep and bear arms. . . . Regardless of economic conditions across the country, our industry has grown and created over 375,000 new, well-paying jobs since the middle of the Great Recession in 2008. Our industry is proud to be one of the bright spots in our economy.[15]

A recent SEC filing by the publicly traded gun company Smith & Wesson details numerous civil cases in which the company is currently involved, in both the United States and Canada.[16] Pending litigation against the company includes cases

---

[14]    To the extent that a handful of gun industry actors have experienced bankruptcy in recent years, there is no evidence that litigation costs were a dispositive, or even significant, factor. *See, e.g.*, Jesse Barron, *How America's Oldest Gun Maker Went Bankrupt: A Financial Engineering Mystery*, N.Y. Times (May 1, 2019) (reporting on the bankruptcy of manufacturer Remington), https://www.nytimes.com/interactive/2019/05/01/magazine/remington-guns-jobs-huntsville.html.

[15]    NSSF, *Firearm and Ammunition Industry Economic Impact Report* (2022), https://www.nssf.org/wp-content/uploads/2022/03/2022-Firearm-Ammunition-Industry-Economic-Impact.pdf.

[16]    Smith & Wesson, *Form 10-Q for the quarterly period ended October 31, 2022* at 15-17,

arising from mass shootings in Highland Park, Illinois; Poway, California; and Parkland, Florida, all of which were perpetrated with Smith & Wesson firearms.[17] The costs associated with such litigation have not forced Smith & Wesson into bankruptcy. Indeed, the company boasted in its 2022 Annual Report that it ended Fiscal Year 2022 with the "second highest revenue in company history at $864.1 million" and a net income of $200 million.[18] Likewise, a recent SEC filing by Sturm, Ruger & Company summarized ongoing litigation against the company and stated the company's expectation that such litigation would not adversely affect it over the long term.[19]

NSSF offers no evidence to suggest that Section 58-35 claims asserted by Defendant would pose any greater threat to the industry's current financial stability. Instead, NSSF relies on misleading citations to outdated and irrelevant sources in support of its exaggerated description of Section 58-35's potential financial impact. For instance, NSSF cites a 22-year-old news article that reported on Smith &

---

https://www.sec.gov/ix?doc=/Archives/edgar/data/1092796/000095017022026093/swbi-20221031.htm.

[17]   *See id*.

[18]   Smith & Wesson, *2022 Annual Report* 3, https://ir.smith-wesson.com/static-files/dbf6f110-6dd3-44a9-bdea-f0b95d8f243f.

[19]   Sturm, Ruger & Co., Inc., *Form 10-Q: Quarterly report for the quarterly period ended October 1, 2022* at 14-16 (stating that "litigation, including punitive damage claims," is unlikely to "have a material adverse effect on the financial position of the Company."), https://www.sec.gov/ix?doc=/Archives/edgar/data/95029/000117494722001158/rgr10q0922.htm.

Wesson's settlement of government lawsuits and quoted one attorney's unsubstantiated assessment that legal fees could "bankrupt" the gun industry—an eventuality that has not come to pass in the intervening decades. *See* NSSF Br. at 25.[20] Similarly, NSSF cites an opinion piece written by an author with no apparent connection with or special insight into the gun industry (NSSF Br. at 25-26),[21] along with news coverage of an unrelated Illinois gun dealer licensing statute, which reported anecdotal evidence that a handful of the thousands of gun dealers in Illinois had shut down (NSSF Br. at 26).[22] Such flimsy sources do not seriously suggest that the gun industry is on shaky financial footing today. Like many commercial industries, the gun industry is sufficiently stable to defend itself in civil litigation—including pursuant to Section 58-35—without spiraling into mass bankruptcies.

## CONCLUSION

For the reasons stated above and in Defendant's brief, Amici respectfully submit that the Court should deny Plaintiff's motion for a preliminary injunction.

---

[20]   Quoting Sharon Walsh, *Gun Industry Views Accord as Dangerous Crack in Its Unity*, Wash. Post (Mar. 18, 2000), https://www.washingtonpost.com/wp-srv/WPcap/2000-03/18/029r-031800-idx.html.

[21]   Quoting Ramsin Canon, *Instead of Criminalizing Individuals, Let's Take Down the Gun Industry*, Truthout (Aug. 9, 2019), https://truthout.org/articles/instead-of-criminalizing-individuals-lets-take-down-the-gun-industry/.

[22]   Citing Steven Spearie, *Gun Dealer: New Illinois Law Will 'Put a Hammer' on Us*, State J.-Reg. (July 22, 2019, 9:00 AM), https://www.sj-r.com/story/news/state/2019/07/23/gun-dealer-new-illinois-law/4633541007/.

DECEMBER 27, 2022

OF COUNSEL:

**BRADY**
Erin Davis
Philip Bangle
Shira Lauren Feldman
Robert Cross
840 First Street NE, Suite 400
Washington, DC 20002
Phone: (202) 370-8106
edavis@bradyunited.org
pbangle@bradyunited.org
sfeldman@bradyunited.org
rcross@bradyunited.org

*Counsel for Brady*

**GIFFORDS LAW CENTER
   TO PREVENT GUN VIOLENCE**
Esther Sanchez-Gomez
268 Bush St. #555
San Francisco, CA 94104
Phone: (415) 433-2062
esanchezgomez@giffords.org

*Counsel for Giffords Law Center to
Prevent Gun Violence*

**EVERYTOWN LAW**
*/s/ Carolyn Shanahan*
Carolyn Shanahan
N.J. Bar No. 171572015
450 Lexington Ave
P.O. Box 4184
New York, NY 10017
Phone: 646-324-8226
Fax: 917-410-6932
cshanahan@everytown.org

OF COUNSEL:

**EVERYTOWN LAW**
Alla Lefkowitz
Alison Barnes
P.O. Box 14780
Washington, DC 20044
Phone: 202-545-3257
Fax: 917-410-6932
alefkowitz@everytown.org
abarnes@everytown.org

*Counsel for Amici Curiae Everytown for
Gun Safety, Brady, and Giffords Law
Center to Prevent Gun Violence*

21