UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| National Shooting Sports Foundation, *Plaintiff*, v. Matthew Platkin, in his official capacity as Attorney General of New Jersey, *Defendant*. | No. 3:22-cv-06646-ZNQ-TJB<br><br>Return Date: 1/17/23 |

**REPLY MEMORANDUM IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .......................................................................................................................... 1

I.      Justiciability Concerns Pose No Bar To Relief ............................................................ 1

II.     NSSF Is Likely To Succeed On The Merits ................................................................ 3

        A.      A1765 Is Preempted ................................................................................... 3

        B.      A1765 Violates the Commerce Clause ..................................................... 5

        C.      A1765 Violates the First Amendment and is Unconstitutionally Vague ................. 6

        D.      A1765 Violates the Second Amendment ................................................. 8

III.    The Remaining Factors Favor An Injunction ............................................................. 9

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*A.S. Goldmen & Co. v. N.J. Bureau of Sec.*,
　163 F.3d 780 (3d Cir. 1999) ............................................................................................. 5

*Baldwin v. G.A.F. Seelig, Inc.*,
　294 U.S. 511 (1935) .......................................................................................................... 6

*Broadrick v. Oklahoma*,
　413 U.S. 601 (1973) .......................................................................................................... 8

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
　476 U.S. 573 (1986) .......................................................................................................... 6

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
　273 F.3d 536 (3d Cir. 2001) ............................................................................................. 9

*City of N.Y. v. Beretta U.S.A. Corp.*,
　524 F.3d 384 (2d Cir. 2008) ......................................................................................... 4, 5

*Drummond v. Robinson Twp.*,
　9 F.4th 217, 224 (3d Cir. 2021) ....................................................................................... 8

*Ex parte Young*,
　209 U.S. 123 (1908) .......................................................................................................... 2

*Ezell v. City of Chicago*,
　651 F.3d 684 (7th Cir. 2011) ........................................................................................... 9

*Frein v. Pa. State Police*,
　47 F.4th 247 (3d Cir. 2022) ........................................................................................... 10

*Gonzales v. Carhart*,
　550 U.S. 124 (2007) .......................................................................................................... 3

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
　949 F.3d 116 (3d Cir. 2020) ............................................................................................. 7

*Green v. DOJ*,
　54 F.4th 738 (D.C. Cir. 2022) .......................................................................................... 2

*Grosjean v. Am. Press Co.*,
　297 U.S. 233 (1936) .......................................................................................................... 9

*Healy v. Beer Inst*,
　491 U.S. 324 (1989) ..................................................................................................... 5, 6

*Ileto v. Glock, Inc.*,
    565 F.3d 1126 (9th Cir. 2009) .................................................................................... 4

*In re Academy*,
    625 S.W.3d 19 (Tex. 2021) ...................................................................................... 10

*Isaacson v. Horne*,
    716 F.3d 1213 (9th Cir. 2015) .................................................................................... 2

*Luis v. United States*,
    578 U.S. 5 (2016) ....................................................................................................... 9

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ................................................................................................... 2

*Minneapolis Star Trib. Co. v. Minn. Comm'r*,
    460 U.S. 575 (1983) ................................................................................................... 9

*N.J. Bankers Ass'n v. N.J. Att'y Gen.*,
    49 F.4th 849 (3d Cir. 2022) .................................................................................. 1, 2

*N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*,
    142 S.Ct. 2111 (2022) ................................................................................................ 9

*Picard v. Magliano*,
    42 F.4th 89 (2d Cir. 2022) ......................................................................................... 2

*Rehaif v. United States*,
    139 S.Ct. 2191 (2019) ................................................................................................ 4

*Reilly v. City of Harrisburg*,
    858 F.3d 173 (3d Cir. 2017) .....................................................................................11

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S.Ct. 63 (2020) .................................................................................................. 10

*Ruan v. United States*,
    142 S.Ct. 2370 (2022) ................................................................................................ 4

*Sherwin-Williams Co. v. Cnty. of Delaware*,
    968 F.3d 264 (3d Cir. 2020) .................................................................................... 10

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................................. 6, 7

*Soto v. Bushmaster Firearms Int'l, LLC*,
    202 A.3d 262 (Conn. 2019) ....................................................................................... 4

*Staples v. United States*,
   511 U.S. 600 (1994) .......................................................................................................... 7

*Stilp v. Contino*,
   613 F.3d 405 (3d Cir. 2010) ............................................................................................. 9

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .......................................................................................................... 2

*TitleMax of Del., Inc. v. Weissmann*,
   24 F.4th 230 (3d Cir. 2022) ........................................................................................... 5, 6

*United States v. Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) ............................................................................................ 8, 9

*Winter v. Wolnitzek*,
   834 F.3d 681 (6th Cir. 2017) ............................................................................................ 2

**Statutes**

15 U.S.C. §7901(a)(3) .......................................................................................................... 4, 5

15 U.S.C. §7901(a)(5) .......................................................................................................... 4, 5

15 U.S.C. §7901(a)(6) .......................................................................................................... 1, 5

15 U.S.C. §7901(a)(7) .......................................................................................................... 4, 9

15 U.S.C. §7901(a)(8) ............................................................................................................. 5

15 U.S.C. §7901(b)(1) ............................................................................................................. 5

15 U.S.C. §7901(b)(2) ............................................................................................................. 1

15 U.S.C. §7901(b)(5) ............................................................................................................. 1

15 U.S.C. §7901(b)(6) ............................................................................................................. 5

15 U.S.C. §7902(a) ................................................................................................................. 3

15 U.S.C. §7903(5)(A) .................................................................................................... 3, 4, 5

N.J. Stat. Ann. §2C:58-34 ...................................................................................................... 6

N.J. Stat. Ann. §2C:58-35(a)(1) ..................................................................................... 5, 6, 7

N.J. Stat. Ann. §2C:58-35(a)(2) ............................................................................................. 6

**Other Authorities**

Office of the AG, Press Release, *Acting AG Platkin Appoints Leaders of New Firearms Enforcement Office* (Sept. 7, 2022), https://bit.ly/3GGNIbm ................................... 2

Office of the AG, Press Release, *Acting AG Platkin Launches New Office to Enforce New Jersey's New Firearms Safety Legislation* (July 25, 2022), https://bit.ly/3ZgAM3a ........................................................................................................ 2

A1765 is preempted and unconstitutional in multiple respects. The Attorney General (the "AG") argues otherwise only by mischaracterizing NSSF's claims, failing to respond to several of its arguments, and ignoring precedent after precedent going against him. Instead of grappling with what is actually at issue, the AG spends most of his brief trying to argue that this Court either cannot or should not reach the merits of NSSF's claims. But those efforts are for naught, as the AG conspicuously declines to promise that he has no intention of invoking A1765 to sue NSSF's members just for lawfully marketing and selling legal firearms. NSSF's members thus face a very real risk of the very litigation against which federal law protects them, which suffices to establish standing, ripeness, and irreparable harm. The Court should grant an injunction.

## ARGUMENT

### I. Justiciability Concerns Pose No Bar To Relief.

*Article III.* A "credible threat of prosecution under an allegedly unconstitutional statute constitutes an injury in fact" so long as the plaintiff intends to engage in conduct "arguably affected with a constitutional interest" and "arguably … proscribed by [the] statute." *N.J. Bankers Ass'n v. N.J. Att'y Gen.*, 49 F.4th 849, 855 (3d Cir. 2022). All "three factors" relevant to that inquiry, *id.*, are satisfied here. The AG wisely does not dispute either (1) that NSSF's members' conduct (the manufacture, marketing, and sale of firearms and related products, *see* Compl. ¶8; Beretta Decl. ¶¶5-8; Sig Sauer Decl. ¶¶4-9) at least "arguably" falls within A1765's broad proscriptive reach, *see* NJ.Br.13-14 (not disputing that A1765 reaches "not otherwise illegal" commercial firearms activity as well as "non-misleading" firearms advertising), or (2) that such conduct is at least "arguably affected with a constitutional interest," *see* 15 U.S.C. §7901(a)(6), (b)(2), (b)(5).

As for the third factor—whether NSSF's members "face[] a 'substantial' 'threat of future enforcement,'" *N.J. Bankers Ass'n*, 49 F.4th at 856—this case is even easier than *N.J. Bankers Association*. There, the Third Circuit found the threat of enforcement sufficient to support standing

when the AG had "articulated that [the plaintiff] is subject to the prohibitions in the [challenged] statute" but had taken no concrete steps toward bringing suit. *Id.* Here, by contrast, the AG has created an entirely new office "with the specific mandate of bringing civil enforcement actions" under A1765 "against firearm companies" that make, market, and sell "legal[] firearms." Office of the AG, Press Release, *Acting AG Platkin Launches New Office to Enforce New Jersey's New Firearms Safety Legislation* (July 25, 2022), https://bit.ly/3ZgAM3a; *see also* Office of the AG, Press Release, *Acting AG Platkin Appoints Leaders of New Firearms Enforcement Office* (Sept. 7, 2022), https://bit.ly/3GGNIbm. If the AG wants to "send[] a clear message to every participant in the firearms industry," July 25 Press Release, *supra*, that is his prerogative. But he cannot then complain when industry hears him loud and clear. *See Ex parte Young*, 209 U.S. 123, 149 (1908) (pre-enforcement suit where state created commission to enforce the law).[1]

    ***As-Applied Pre-Enforcement Challenge.*** The AG argues that, because NSSF challenges A1765 before he has enforced it, this suit "[i]n substance" is "a facial attack" on the law, such that NSSF must show that A1765 could *never* lawfully be applied *to anyone*. NJ.Br.14-15. The AG is wrong. Plaintiffs routinely bring (and win) pre-enforcement challenges to a law *as it would apply to their own anticipated conduct*. *See, e.g.*, *Picard v. Magliano*, 42 F.4th 89, 97-102 (2d Cir. 2022); *Green v. DOJ*, 54 F.4th 738, 743-45 (D.C. Cir. 2022); *Winter v. Wolnitzek*, 834 F.3d 681, 687 (6th Cir. 2017); *Isaacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2015). That is exactly what NSSF has done here, arguing that A1765 cannot lawfully be applied to hold its members liable for specifically identified conduct. *See* Compl. ¶¶7-11; Beretta Decl. ¶¶6-7, 13-17; Sig Sauer Decl.

---

[1] This penchant for state officials to say one thing in the press and another thing in the courts is why plaintiffs are not required to plead themselves into criminal or civil liability, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007), particularly when the challenged law (like this one) "sweeps broadly," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014).

¶¶5-6, 12-14.  For instance, NSSF alleges that A1765 is preempted to the extent it conflicts with the PLCAA, and that A1765 is unconstitutional as applied to out-of-state commerce.  To be sure, "preenforcement, as-applied challenges" must challenge a "discrete and well-defined" application of a law that is "likely to occur."  *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007).  But, as explained above, NSSF has clearly done that.  NSSF need not go on to allege or prove that A1765 is *also* unconstitutional as to applications it does not challenge.

## II.  NSSF Is Likely To Succeed On The Merits.

### A.  A1765 Is Preempted.

Under the PLCAA, civil actions against firearm industry members to redress harm resulting from a third party's misuse of a firearm "may not be brought."  15 U.S.C. §§7902(a), 7903(5)(A).  The AG does not deny that A1765 authorizes actions that fit that bill.  Instead, he claims that A1765 suits fit within the so-called predicate exception, §7903(5)(A)(iii), because A1765 is a state statute that applies to the sale or marketing of firearms products.  NJ.Br.18-24.  That wooden reading would let the predicate exception swallow the PLCAA whole.  In reality, text, context, and common sense all confirm that the predicate exception excuses only laws that (like the enumerated examples) impose concrete obligations on firearms manufacturers and sellers, such that they can "knowingly" violate them, and target only conduct that is the "proximate cause" of any harm.  15 U.S.C. §7903(5)(A)(iii).  Because A1765 does neither, it is preempted.  NSSF.Br.5-8.

The AG insists that the predicate exception empowers states to wield "capacious tort principles" against the firearms industry.  NJ.Br.29.  In the AG's telling, the exception applies anytime a suit is brought (1) under a "legislative enactment" (2) that is "capable of being applied" to the firearms industry (3) for harm not caused "solely" by a third party's misconduct.  NJ.Br.19, 24.  That expansive view of the predicate exception cannot be squared with the rest of the PLCAA, which by its terms protects against the very "capacious tort principles" A1765 embraces.  *See* 15

3

U.S.C. §7901(a)(3), (a)(5); *id.* §7903(5)(A)(v). Indeed, the statute could not be more explicit that its *raison d'être* is to put an end to suits grounded in the kinds of "expans[ive]" "theories" A1765 embraces. *Id.* §7901(a)(7). It is little surprise, then, that courts have repeatedly rejected the AG's any-statute-capable-of-being-applied reading of the predicate exception. *See* NSSF.Br.8-9. "[T]he text and purpose of the PLCAA show[] that Congress intended to preempt general tort theories of liability even in jurisdictions … that have codified such causes of action." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136 (9th Cir. 2009); *see* NSSF.Br.3-9. The AG's contrary reading would make it trivially easy for states to evade the PLCAA's core command—an "absurd" result that would make nonsense of the statute. *City of N.Y. v. Beretta U.S.A. Corp.*, 524 F.3d 384, 401-03 (2d Cir. 2008).[2]

The AG's attempts to defend A1765's "knowingly or recklessly" regime fare no better. The AG says the predicate exception requires knowledge only "as to the core act"—i.e., the fact that the defendant was, e.g., engaged in marketing—"not as to … whether [it] is unreasonable." NJ.Br.25. That argument cannot be reconciled with the exception's plain text, which exempts only claims that a defendant "knowingly *violated* a State or Federal statute applicable to the sale or marketing of the product." 15 U.S.C. §7903(5)(A)(iii) (emphasis added). Nor can it be reconciled with the Supreme Court's consistent rejection of arguments that scienter requirements apply to only some elements of a federal statute. *Ruan v. United States*, 142 S.Ct. 2370, 2376-78 (2022); *Rehaif v. United States*, 139 S.Ct. 2191, 2195-97 (2019). And once again, the AG's reading "would

---

[2] An amicus accuses NSSF of ignoring cases over "the intervening decades" that purportedly "have long" permitted claims against industry members. Everytown.Br.3-4, 20. Setting aside the problem that those cases do not involve the predicate exception, they all hale from *just the past three years*, following one court's misguided departure from decades of precedent. *See Soto v. Bushmaster Firearms Int'l, LLC*, 202 A.3d 262, 302-03 (Conn. 2019). And given the recency of such efforts to weaponize the PLCAA's exceptions to swallow its rules, Compl. ¶¶14-26, it is not particularly telling that serious harm to the firearms industry "has not yet come to pass," Everytown.Br.20. The PLCAA promises the industry should not have to wait until it does.

4

allow the predicate exception to swallow the" PLCAA's clear *rule*, which is that state laws imposing "vicarious liability" on industry members "for harm caused by firearms that were lawfully distributed into primary markets" are "preempt[ed]." *City of N.Y.*, 524 F.3d at 403.

The AG's argument on proximate cause is similarly unpersuasive. The AG asserts that Congress did not intend to embrace a uniform approach to causation, but rather sought to exempt "capacious tort principles" with "an array of meanings across States." NJ.Br.28-29 & n.7. That laissez-faire approach is impossible to square with Congress' decision to enshrine the words "proximate cause" in the exception—not to mention with the reality that Congress enacted the PLCAA specifically to *prevent* differences across states from unsettling the industry, 15 U.S.C. §7901(a)(6), (a)(8), (b)(6), and to *eliminate* potential liability for "intervening" third-party conduct, *see id.* §7901(a)(3), (a)(5), (a)(6), (b)(1); *id.* §7903(5)(A)(v). A1765 is preempted.

### B. A1765 Violates the Commerce Clause.

The AG misunderstands the Commerce Clause, NSSF's claim, and Third Circuit precedent. The problem with A1765 is not just that it has *effects* on out-of-state commerce. NJ.Br.31-33 & n.9. The problem is that it actually "'regulate[s]' … transactions [that] occur 'wholly outside' the state." *TitleMax of Del., Inc. v. Weissmann*, 24 F.4th 230, 238 (3d Cir. 2022) (quoting *A.S. Goldmen & Co. v. N.J. Bureau of Sec.*, 163 F.3d 780, 786 (3d Cir. 1999)). The AG does not deny that NSSF members could be held liable under A1765 for contributing to an in-state "nuisance" based on their sales, marketing, or manufacturing that took place wholly out of state. *See* NJ.Br.31 n.8. Nor could he, given the statute's clear text. *See* N.J. Stat. Ann. §2C:58-35(a)(1); NSSF.Br.12-13. That is the end of the inquiry. A state law that imposes liability for transactions that take place out of state is "per se invalid" to that extent, even if the regulated "commerce has effects within the State," *Healy v. Beer Inst*, 491 U.S. 324, 335-36 (1989), and even if the goods made or sold in a regulated out-of-state transaction are specifically intended to be resold in the regulating state, *Baldwin v.*

5

*G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935).  *See also Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 580 (1986) (the "mere fact that" a state law is "triggered only by" in-state effects "does not validate the law if it regulates … out-of-state transactions").  The nature or extent of the "burdens" A1765 imposes on out-of-state commerce is therefore beside the point.  *Contra* NJ.Br.32.  Indeed, *TitleMax* itself makes clear that balancing comes into play only when a state law does *not* regulate conduct "wholly outside [the state]."  24 F.4th at 240.  Because A1765 imposes liability for out-of-state conduct based on downstream, in-state effects, it is per se invalid under the Commerce Clause.  *Healy*, 491 U.S. at 332, 335-36.[3]

### C.     A1765 Violates the First Amendment and is Unconstitutionally Vague.

A1765 imposes textbook speaker-, content-, and viewpoint-based restrictions on speech.  Its marketing restrictions apply only to firearm industry members (speaker), only to marketing about firearm products (content), and only to materials promoting firearms (viewpoint).  *See* N.J. Stat. Ann. §§2C:58-34, 2C:58-35(a)(1), (a)(2); NSSF.Br.15-16.  A1765's speech restrictions are thus subject to strict scrutiny.  *See* NSSF.Br.17-18.  Remarkably, the AG does not even try to argue that A1765 can satisfy that standard.  He has therefore forfeited any response on that score.

The arguments the AG does make fare no better.  The AG declares in a footnote that A1765 is "better understood as content neutral," NJ.Br.36 n.11, but he never explains why.  Nor could he; A1765 applies only to "marketing of gun-related products."  N.J. Stat. Ann. §2C:58-35(a)(1)-(2).  That is as content-based as it gets, as *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011), which the AG never cites, holds.  The AG next declares A1765 "clearly not viewpoint discriminatory."  NJ.Br.35.  That claim is equally inexplicable.  As NSSF explained in its opening brief and the AG

---

[3] The AG says the Supreme Court has cabined the "extraterritorial effects" doctrine to "'price control or price affirmation' laws."  NJ.Br.32 n.9.  That is wrong, but in all events irrelevant, as NSSF has not brought an "extraterritorial effects" claim.  It has brought an extraterritorial-*regulation* claim under *Healy*, *Brown-Forman*, and *Baldwin*—none of which the AG even cites.

6

pointedly does not deny, A1765 restricts liability to gun-related speech by industry members—as opposed to speech by, e.g., the AG's amici—presumably because such speech is more likely to communicate a *view* the state dislikes: guns are good. NSSF.Br.15. A1765 is therefore subject to heightened scrutiny it cannot satisfy, *Sorrell*, 564 U.S. at 564-65, as the AG's forfeiture confirms. *See Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 139 (3d Cir. 2020).[4]

The AG argues that the speech A1765 covers is entitled to lesser protection because it "is commercial." NJ.Br.36. But the "commercial" label cannot excuse the state's speaker, content, and viewpoint discrimination, since A1765 "authorizes the imposition of liability for speech about a product … *even when that speech is truthful*." NSSF.Br.16. Indeed, the AG concedes that A1765 can be "enforced against truthful, non-misleading speech." NJ.Br.37 n.13. He just notes that it could *also* be applied to *false* advertising or promotion of *unlawful* products. NJ.Br.17 n.1, 37. But the fact that A1765 might capture some speech that is "not protected," NJ.Br.37, is irrelevant to NSSF's claim that A1765 is unconstitutional as applied to *truthful* speech about *lawful* products.

The AG also cannot help but illustrate the root problem with A1765's speech restrictions. A1765 does not just reach speech that is "unlawful or misleading"; it also reaches "marketing of dangerous weapons" that the AG considers "heedless." NJ.Br.37 nn.12-13; *see* N.J. Stat. Ann. §2C:58-35(a)(1) (prohibiting "unreasonable" "marketing of a gun-related product," separate from marketing "unlawful in itself"). But, of course, *all* gun-related products are "'dangerous,' in some general sense." *Staples v. United States*, 511 U.S. 600, 611 (1994). A1765 thus gives the AG carte blanche to sue industry members for marketing he deems insufficiently attentive to the dangers guns inherently pose. That is a recipe for suppression of both First and Second Amendment rights.

---

[4] The AG suggests that underinclusiveness is not a problem for commercial-speech restrictions. NJ.Br.36 n.11. That is wrong. As cases like *Sorrell* (again) make clear, underinclusiveness can be a tell that a law is viewpoint-discriminatory. That is the case here. *See* NSSF.Br.17-18.

7

It also confirms A1765's overbreadth. The AG does not deny that A1765 reaches marketing later deemed (by the AG) "to have indirectly *contributed* to gun-related problems in" the state, even if it cannot be shown "to have led to the purchase of [a] firearm used to perpetrate crimes." NSSF.Br.18; *see* NJ.Br.3, 26. Even where constitutionally protected products are not at issue, "the First Amendment" gives "breathing space," *Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973), to the promotion of lawful but lethal products, NSSF.Br.16 (citing cases). A1765 restricts that constitutionally mandated breathing space to less than the head of a pin.

For similar reasons, A1765 is unconstitutionally vague. NSSF.Br.18-23. The AG faults NSSF for "repeat[ing]" its vagueness argument "under both the Due Process Clause and the First Amendment," NJ.Br.37, but that is a result of *New Jersey's* decision to impose vague standards to police both speech and conduct. The AG's only response is that laws imposing "reasonableness" standards are not *always* vague. NJ.Br.33-35, 37-39. That is non-responsive to NSSF's arguments about the layers of uncertainty baked into A1765. NSSF.Br.22-23; *see* Compl. ¶¶32-33, 90-93. And it is flatly inconsistent with First Amendment principles. A requirement that people "speak reasonably" would undoubtedly pose fatal vagueness problems. A1765 is no better.

### D.  A1765 Violates the Second Amendment.

The AG's entire response on the Second Amendment is that A1765 does not implicate the constitutional guarantee *at all* because it burdens commerce in arms, as opposed to restricting certain types of arms. NJ.Br.39-40. But even this Circuit's pre-*Bruen* precedent recognized that "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment under … Heller." *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010); *see also Drummond v. Robinson Twp.*, 9 F.4th 217, 224, 226-28 (3d Cir. 2021). And, in all events, long-settled Supreme Court precedent holds that a state may not evade a constitutional right by attacking the means by which that right is exercised. *See, e.g.*, *Grosjean v. Am. Press Co.*, 297

8

U.S. 233, 250-51 (1936). "Constitutional rights … implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26-27 (2016) (Thomas, J., concurring) (collecting examples). Just as New Jersey cannot evade the Press Clause by targeting the commercial sale of ink and paper, *Minneapolis Star Trib. Co. v. Minn. Comm'r*, 460 U.S. 575, 592-93 (1983), the Second Amendment protects "acts necessary to the[] exercise" of the right— with none more essential than the acts of manufacturing and selling arms to be kept and borne. *See Marzzarella*, 614 F.3d at 92 n.8; *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).

A1765 thus "do[es] not fall outside the scope of the Second Amendment." *Marzzarella*, 614 F.3d at 92 n.8. And the AG makes no argument that, if the Second Amendment applies, A1765 does not violate it. The AG cannot now be heard to make that case; the argument is forfeited.[5]

### III. The Remaining Factors Favor An Injunction.

The significant chilling effect A1765 has on constitutionally protected, truthful speech, plus the loss of immunity from suit, suffice to demonstrate irreparable injury. *Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010). But they are far from alone. NSSF.Br.24-26.

The AG thinks it is "unclear" why the risk of being sued under A1765 "would constitute irreparable harm today." NJ.Br.10. The answer is pellucid. NSSF's members "remain under a constant threat" that the AG will sue them "without prior notice"; that ever-present threat leaves them no choice but to steer clear of A1765's broad ambit, which countenances liability even for truthful speech about lawful products, *see* NJ.Br.13-14; and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman*

---

[5] The AG has bragged that A1765 targets "legal[] firearms." July 25 Press Release, *supra*. By the AG's own admission, then, A1765 applies to conduct "the Second Amendment's plain text" covers, which means the AG must "justify [A1765] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *NYSRPA v. Bruen*, 142 S.Ct. 2111, 2129-30 (2022). The AG could not do so even if he tried. *See* 15 U.S.C. §7901(a)(7); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001); NSSF.Br.23-24.

9

*Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67-68 (2020) (per curiam).

The AG complains that NSSF's members have not attested that they have "ceased all advertising or promotion" of their products in New Jersey. NJ.Br.8. That is not how the First Amendment, or the irreparable harm inquiry, works. "Even if the government has not entirely prevented citizens from speaking …, its burdens on speech … [still] may violate the First Amendment." *Frein v. Pa. State Police*, 47 F.4th 247, 254 (3d Cir. 2022). The speech-muzzling effect of the threat of lawsuits thus demonstrates irreparable harm wholly apart from "changes to [members'] operations" or scaling back of their business. NJ.Br.8.

The imminent threat of lawsuits poses a double risk of irreparable harm, moreover, given the immunity the PLCAA confers on NSSF's members. Congress enacted the PLCAA to ensure that industry members would not need to pin their hopes on raising "affirmative defenses in state court." NJ.Br.10. As its plain text makes clear, and countless courts have recognized, the PLCAA guarantees *immunity from suit* entirely. *E.g.*, *In re Academy*, 625 S.W.3d 19, 32-36 (Tex. 2021) (collecting cases). The AG invokes *Sherwin-Williams Co. v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020), but that case is far afield of this one. The plaintiff there preemptively sued every county in E.D. Pa. "to prevent them from" bringing common-law claims against it. *Id.* at 267. Here, by contrast, NSSF has sued the officer responsible for enforcing the challenged statute, who has already confirmed his intent to vigorously enforce it by creating a new office with the sole charge of suing the plaintiff's members. What is more, because there is no PLCAA analogue for lead-paint companies, any injury from a future lawsuit in *Sherwin-Williams* hinged on what each "County might allege" and whether it "will prevail." *Id.* at 270. Not so here, as NSSF's members are immune from suit entirely as a matter of federal law—which is why the ability to assert "affirmative defenses" when the AG sues them does not defeat irreparable injury. NJ.Br.10, 13.

NSSF's likelihood of success, *see* pp.3-9, *supra*; NSSF.Br.3-24, and irreparable injury, *see* pp.9-10, *supra*; NSSF.Br.24-26, suffice to justify an injunction. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). In any event, appeals to the generalized interest in enforcing laws, NJ.Br.40, do not undercut NSSF's public interest arguments, *see* NSSF.Br.26-27.

## CONCLUSION

For the reasons set forth in NSSF's initial brief and above, this Court should enjoin A1765.

Respectfully submitted,

| | |
|---|---|
| s/ Jonathan M. Preziosi<br>JONATHAN M. PREZIOSI<br>LEWIS BRISBOIS BIS GARRD<br>   & SMITH LLP<br>1037 Raymond Boulevard<br>Suite 800<br>Newark, NJ 07102<br>(979) 792-8736<br>jonathan.preziosi@lewisbrisbois.com | PAUL D. CLEMENT*<br>ERIN E. MURPHY*<br>MATTHEW D. ROWEN*<br>NICHOLAS M. GALLAGHER*<br>CLEMENT & MURPHY, PLLC<br>706 Duke Street<br>Alexandria, VA 22314<br>(202) 742-8900<br><br>* admitted *pro hac vice* |

*Counsel for Plaintiff*

January 10, 2022

11