**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW J. PLATKIN, ATTORNEY GENERAL OF NEW JERSEY,<br><br>Defendant. | Civil Action No. 22-6646 (ZNQ)(TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion for a Preliminary Injunction filed by National Shooting Sports Foundation, ("NSSF") ("the Motion", ECF No. 4). NSSF filed a brief in support of the Motion. ("Moving Br.", ECF No. 4-1.) Defendant Matthew J. Platkin, Attorney General of New Jersey ("Defendant"), opposed ("Opp'n Br.", ECF No. 11), and NSSF replied ("Reply Br.", ECF No. 16). Also before the Court is an amicus curiae brief ("Amici Br.", ECF No. 15) in opposition to the Motion filed by Brady, Everytown for Gun Safety, and Giffords Law Center to Prevent Gun Violence (collectively, "Amici Curiae").

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motion for a Preliminary Injunction.

1

I.  **BACKGROUND AND PROCEDURAL HISTORY**

On November 16, 2022, NSSF filed a Complaint seeking declaratory and injunctive relief and nominal damages against Defendant Matthew J. Platkin, the Attorney General of New Jersey in response to Governor Phil Murphy signing Assembly Bill 1765 ("A1765" used interchangeably with "N.J.S.A. 2C:58-35") into law. (Compl., ECF No. 1.) On November 23, 2022, NSSF filed the instant motion for a preliminary injunction seeking to enjoin Defendant as well as the Attorney General's officers, agents, employees, attorneys, and all persons in active concert or participation with them from implementing or enforcing the A1765. (*See* ECF No. 4.)

NSSF is a Connecticut non-profit trade association for the firearm, ammunition, and hunting and shooting sport industry with more than 9,000 members. (Compl. ¶ 8.) Defendant is the Attorney General of New Jersey. (*Id.* ¶ 12.)

On June 5, 2022, the Governor of New Jersey signed A1765 into law. (*Id.* ¶ 27.) A1765 is titled "Act concerning public safety and supplementing Title 2C of the New Jersey Statutes." (*Id.*) A1765 creates a cause of action for public nuisance applying to gun industry members "engaged in the sale, manufacturing, distribution, importing, or marketing of a gun-related product, and any officer, agent, employee, or other person authorized to act on behalf of that person or who acts in active concert or participation with one or more such persons." (*Id.* ¶ 29.) A1765 also authorizes liability for any gun industry member who fails to "establish, implement, and enforce reasonable controls regarding its manufacture, sale, distribution, importing, and marketing of gun related products." (*Id.* ¶ 31.)

II.  **LEGAL STANDARD**

District courts have the freedom to fashion preliminary equitable relief so long as they do so by "exercising their sound discretion." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

2

(2008). To obtain a preliminary injunction, the moving party must demonstrate: "(1) the reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured if relief is not granted. Moreover, the Court also should take into account, when relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest. *South Camden Citizens in Action v. N.J. Dep't of Envtl. Prot. ("SCCIA")*, 274 F.3d 771, 777 (3d Cir. 2001). "[A] district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). It follows that a "failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *See id.* at 777 (citing *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir.1982)). As a threshold matter, the Court considers the first two prongs together. Only when Plaintiff has sufficiently met the first two prongs, does it consider the third prong relating to the possibility of harm to other parties and finally, evaluate whether public interest is served by granting injunctive relief.

### III. JURISDICTION

The Court has original jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

### IV. DISCUSSION

#### A. LIKELIHOOD OF SUCCESS ON THE MERITS

*1. Article III Standing*

Defendant first argues in opposition to the Motion that NSSF cannot succeed on the merits because its lawsuit is premature. (Opp'n Br. at 11.) Defendant asserts that because NSSF seeks to invoke Article III jurisdiction to preempt a hypothetical future public nuisance suit, its lawsuit

3

is not ripe. (*Id.* at 12.) In reply, NSSF argues an injury in fact exists because there is a credible threat of prosecution under A1765. (Reply Br. at 1.)

"Article III requires a showing that the plaintiff has: '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) and that is likely to be redressed by a favorable judicial decision.'" *New Jersey Bankers Ass'n v. Att'y Gen. of N.J.*, 49 F. 4th 849, 855 (3d Cir. 2022) (quoting *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016). As to the injury in fact element, a plaintiff is not required to expose himself to liability before bringing a suit to challenge the basis of the threat. *Id.* (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007)). A threat of prosecution under an allegedly unconstitutional statute may constitute an injury in fact. *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). The threat, however, "may not be merely 'imaginary or wholly speculative.'" *New Jersey Bankers Ass'n*, 49 F. 4th at 855 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014)).

The Supreme Court has articulated a three-factor test to establish "a credible threat of enforcement." *Id.* (citing *Susan B. Anthony List*, 573 U.S. at 161 (internal citations omitted)).

> First, there must be an intention to engage in a course of conduct arguably affected with a constitutional interest. Second, the intended conduct must be arguably proscribed by the statute that the plaintiff seeks to challenge. . .Third, the plaintiff must face a substantial threat of future enforcement under the statute.

*Id.* (internal citations and quotations omitted).

The first two factors here are clearly met. NSSF members' manufacturing, marketing, and sale of firearms and related products "arguably affects a constitutional interest." *See* 15 U.S.C. §7901(a)(6) ("The possibility of imposing liability on an entire industry for harm that is solely caused by others is an abuse of the legal system. . . [and] threatens the diminution of a basic constitutional right and civil liberty[.]"). Such conduct is also "arguably proscribed by the statute."

4

*See* N.J.S.A. 2C:58-35 (a)(1) ("A gun industry member shall not, by conduct either unlawful in itself or unreasonable under all the circumstances, knowingly or recklessly create, maintain, or contribute to a public nuisance in this State through the sale, manufacturing, distribution, importing, or marketing of a gun-related product."). Accordingly, at issue is the third factor: whether NSSF faces a substantial threat of future enforcement under A1765. *See New Jersey Bankers Ass'n*, 49 F. 4th at 855.

Defendant argues that NSSF does not properly plead a substantial threat of future enforcement because it seeks to preempt a hypothetical future public lawsuit. (Opp'n Br. at 13.) Defendant compares the instant matter to *Sherwin-Williams Co. v. County of Delaware, Pennsylvania*, 968 F.3d 264 (3d Cir. 2020) and argues that NSSF's arguments for invoking Article III standing are even more flawed than those of *Sherwin-Williams*, where the court found no Article III standing. *Sherwin-Williams*, however, is distinguishable from the instant matter. There, two counties sued Sherwin-Williams for public nuisance based on its sale and manufacture of lead-based paint. *Id.* at 267. Sherwin-Williams thereafter sued three other counties to challenge their anticipated enforcement actions. Sherwin-Williams alleged that Delaware County retained, or was in the process of retaining, counsel and intended to sue Sherwin-Williams to pay for inspection and abatement of lead paint. *Id.* at 267. The Third Circuit rejected the plaintiff's argument as a basis for jurisdiction indicating that "[t]he County might sue Sherwin Williams, but it might not. The uncertainty surrounding these fundamental questions renders these claims unfit for judicial resolution." *Id.* at 272.

Here, however, NSSF faces a substantially more concrete threat of future enforcement of A1765 than the plaintiff in *Sherwin-Williams*. The statute at issue here specifically permits the Attorney General to "commence an action to seek and obtain[ ] an injunction prohibiting the gun

5

industry member from continuing that conduct or engaging therein or doing any acts in furtherance thereof[]" if it "appears to the Attorney General that a gun industry member has engaged or is engaging in conduct that violates [the statute][.]" N.J.S.A. 2C:58-35(a)(3)(b). No such statute existed in *Sherwin-Williams*. Furthermore, as NSSF articulates in their Reply Brief, the Attorney General has created an entirely new office with the specific mandate of bringing civil enforcement actions under A1765. (Reply Br. at 2.); *See New Jersey Bankers Ass'n*, 49 F. 4th at 856 (finding a substantial threat of harm for purposes of standing where the Attorney General articulated that the plaintiff was subject to the prohibitions of the statute). Accordingly, because the Attorney General has been specifically vested with the authority to carry out enforcement actions against gun industry members for violating A1765, and appears intent to do just that with the creation of an office to bring such actions, the Court finds that NSSF faces a substantial threat of future enforcement under A1765. The injury in fact requirement for standing is therefore satisfied.

NSSF also satisfies the remaining elements of Article III standing. The credible threat of prosecution is traceable to the Attorney General's enforcement of N.J.S.A. 2C:58-35, consistent with the text of the statute. The credible threat of prosecution would be redressed by an injunction from enforcing the statute. The Court therefore concludes that NSSF has Article III standing to bring the instant lawsuit.[1]

### 2. *Preemption*

The Supremacy Clause of the U.S. Constitution indicates that, "the Laws of the United States . . . shall be the supreme law of the Land," and state law is invalid if federal law preempts state law. U.S. Const. art. VI, cl. 2. "Express preemption occurs when a federal law contains

---

[1] Defendant additionally argues that NSSF facially attacks the Constitutionality of A1765 and, thus, does not meet its burden for a facial attack. (Opp'n Br. at 14.) For reasons that will follow, the Court does not reach the parties' Constitutional arguments.

express language providing for the preemption of any conflicting state law." *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 395 (3d Cir.2010) (citation omitted). "Implied conflict preemption occurs when it is either impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 395–96 (internal quotation marks and citations omitted).

Under the federal Protection of Lawful Commerce in Arms Act (the "PLCAA"), a civil action may not be brought "against a manufacturer or seller of a [firearm or related product]" for injuries "resulting from the ... misuse of a [firearm or related product] by ... a third party[,]" subject to six enumerated exceptions. 15 U.S.C. §§7902(a), 7903(5)(A). A1765 creates a cause of action for public nuisance applying to gun industry members "engaged in the sale, manufacturing, distribution, importing, or marketing of a gun-related products, and any officer, agent, employee, or other person authorized to act on behalf of that person or who acts in active concert or participation with one or more such persons." N.J.S.A. 2C:58-35.

Given that there is no explicit language within the PLCAA providing for the preemption of any conflicting state law, the Court will assess whether the PLCAA *impliedly* preempts A1765. Implied conflict preemption occurs when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990) (citations omitted).

NSSF argues that the PLCAA imposes clear restrictions, but A1765 creates liabilities that conflict with those restrictions. (Moving Br. at 3–4.) NSSF asserts that the PLCAA preempts state efforts to subject those who manufacture or sell firearms or firearm related products to liability for harms resulting from the criminal or unlawful misuse of a qualified product by a third

7

party. (*Id.* at 4, citing 15 U.S.C. § 7903(5)(A).) Defendant argues that NSSF misreads the statute, and N.J.S.A. 2C:58-35 fits perfectly within the predicate exception. (Opp'n Br. at 18.)

The gravamen of the parties' dispute is therefore whether A1765 falls within the predicate exception to the PLCAA. (*See id.; see also* Moving Br. at 5.) The predicate exception of the PLCAA exempts "an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought[.]" 15 U.S.C. § 7903(5)(A)(iii).

NSSF first argues that A1765 does not fall within the PLCAA's predicate exception because the predicate exception cannot be "sensibly read to exempt any and all statutes that apply to the firearms industry." (Moving Br. at 5.) Such a reading would "allow the predicate exception to swallow the statute, which was intended to shield the firearms industry from vicarious liability for harm caused by lawfully distributed firearms." (*Id.*) NSSF asserts that the term "applicable" must be read in the context of the statute's language as a whole. (*Id.*) The language immediately surrounding the term "applicable," NSSF argues, provides clear indications that the predicate exemption only applies to laws that impose concrete obligations and prohibitions directly on manufacturers and sellers with respect to manufacturing and sales. (*Id.*) NSSF asserts that by the exception's terms, it only exempts civil actions that require a defendant to have *knowingly* violated the relevant statute. (*Id.*) NSSF maintains that the two examples provided within the predicate exception require a violation of a concrete obligation or prohibition. (*Id.* at 7.) The first, NSSF contends, requires a knowing violation of a recordkeeping requirement, *e.g.*, knowingly entering false information, knowingly failing to enter appropriate information, or aiding, abetting, or conspiring with someone to make a false statement material to the lawfulness of the sale. (*Id.*) The second,

8

NSSF asserts, requires a knowing violation of the obligation not to facilitate firearm purchases by aiding, abetting, or conspiring to sell a firearm to someone the seller knows or has reasonable cause to believe is buying it for a prohibited person. (*Id.*) These two examples, NSSF argues, look nothing like A1765. (*Id.*) NSSF maintains that A1765 commands members of the firearms industry to conduct their operations "reasonably" without giving any guidance as to which controls, procedures, or conduct, is reasonable. (*Id.*)

In opposition, Defendant asserts that NSSF misconstrues the meaning of "applicable to" within the predicate exception. (Opp'n Br. at 19.) Defendant contends that Section 58-35 applies to the unlawful sales and marketing conduct by fire industry members. (*Id.*) Defendant argues that NSSF's interpretation that a law is only "applicable to" the sale or marketing of a firearm product if that law imposes a sufficiently concrete duty "runs into a number of defects." (*Id.* at 20.) Defendant asserts that the limiting principle of "sufficiently concrete" is nowhere within the text of the statute. (*Id.*) Defendant argues that NSSF mischaracterized the PLCAA's purpose; Congress made clear its concern was about imposing liability on an entire industry for harm that is solely caused by others. (*Id.* at 21.) Defendant asserts that the predicate exception indicates that it "includes" examples, which are intended to illustrate a broad concept rather than narrowly circumscribe a term with exclusive categories, as NSSF suggests. (*Id.* at 23.)

In its reply, NSSF reiterates that Defendant's interpretation of the predicate exception would let the exception "swallow the PLCAA whole." (Reply Br. at 3.) NSSF argues that Defendant's expansive view of the predicate exception "cannot be squared with the rest of the PLCAA, which by its terms protects against the very 'capacious tort principles' A1765 embraces. (*Id.*)

9

Amici Curiae argue that the PLCAA does not preempt all civil liability claims against gun industry defendants, and it would not preempt claims arising under N.J.S.A. 2C:58-35. (Amici Br. at 2.) Amici Curiae assert that plaintiffs throughout the country have successfully invoked the PLCAA's predicate exception based on statutes that share features of N.J.S.A. 2C:58-35. (*Id.*) Amici also maintain the PLCAA's sponsors during Congressional debate made clear that the PLCAA was not intended to restrict liability of state legislatures to pass gun laws. (*Id.* at 7.) Amici contends that the U.S. Court of Appeals for the Second Circuit issued an instructive framework for identifying predicate statutes per the PLCAA. (*Id.* at 9.) Specifically, the Second Circuit articulated that a predicate statute under the PLCAA must fall into one of three categories: statutes (1) that expressly regulate firearms, (2) that courts have applied to the sale or marketing of firearms, or (3) that do not expressly regulate firearms, but that clearly can be said to implicate the purchase and sale of firearms. (*Id.*, citing *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 403–04 (2d Cir. 2008).) Amici contend that since the Second Circuit's *Beretta* decision, courts around the country have identified a range of flexible statutes that qualify as predicates. (*Id.* at 10.)

For issues related to statutory interpretation, as the Supreme Court has observed, "[o]ur analysis begins and ends with the text[.]" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014). "[W]here the [legislature's] will has been expressed in language that has a reasonably plain meaning, that language must ordinarily be regarded as conclusive." *Byrd v. Shannon*, 715 F.3d 117, 122 (3d Cir. 2103) (citing *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993). Reasonable statutory interpretation must account for both the "'specific context in which. . .language is used' and the broader context of the statute as a whole." *Utility Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

A statutory "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme. . .because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Assn. of Tex. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371 (1988).

The statutes at issue, in their relevant parts, are as follows.

The PLCAA:

> A qualified civil liability action may not be brought in Federal or State Court. The term 'qualified civil liability action" means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party, but shall not include an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought.

15 U.S.C. §§ 7902, 7903(5(A)(iii)

A1765:

> (1) A gun industry member shall not, by conduct either unlawful in itself or unreasonable under all the circumstances, knowingly or recklessly create, maintain, or contribute to a public nuisance in this State through the sale, manufacturing, distribution, importing, or marketing of a gun-related product. (2) A gun industry member shall establish, implement, and enforce reasonable controls regarding its manufacture, sale, distribution, importing, and marketing of gun-related products. It shall be a public nuisance to engage in conduct that violates paragraphs (1) or (2) of this subsection.

N.J.S.A. 2C:58-35 (a).

Here, the parties dispute the meaning and interpretation of the term "applicable to" within the predicate exception of the PLCAA. NSSF asserts that the term must be read in the context of the surrounding language and the statute as a whole. (Moving Br. at 5.) NSSF argues that the text

11

immediately surrounding "applicable" provide clear indications that the predicate exception applies only to laws that impose concrete obligations and prohibitions directly on manufacturers and sellers with respect to manufacturing and sale. (*Id.*) By its terms, the exception only exempts civil actions that require proof that the defendant knowingly violated the relevant statute, which implies some requirement sufficiently concrete that a manufacturer or seller could knowingly violate it. (*Id.* at 5–6.)

Defendant asserts A1765 corresponds to the sale and marketing activities of firearms industry members by express reference. (Opp'n Br. at 19.) Defendant maintains that A1765 "applies to (fits, has relevance to, is suitable and appropriate to) unlawful sales and marketing conduct by industry members." (*Id.*)

The term "applicable to" is defined as capable of being applied, or having relevance to. *See Ransom v. FIA Card Serv., N.A.*, 562 U.S. 61, 69 (2011). Accounting for both the specific and broader context in which "applicable to" is used, the Court agrees with NSSF that it would impose a concrete obligation with which industry members can confidently ensure compliance. *See Utility Air Regul. Grp.*, 573 U.S. at 321. The predicate exception exempts only those civil actions that require proof that the actor *knowingly* violated the relevant statute. 15 U.S.C. § 7903(5(A)(iii). The knowingly requirement of the predicate exception necessitates the actor to have a sufficiently concrete duty to have knowingly violated a relevant statute. It is contrary to the PLCAA to hold an industry member liable who complies with all laws but did not know that it failed to employ "reasonable procedures, safeguards, and business practices," or has conducted its lawful business in a manner so "unreasonable under all the circumstances" that it can be said to have "contribute[d] to" "a condition which. . .contributes to the injury or endangerment of the health, safety, peace, comfort, or convenience of others." N.J.S.A. 2C:58-35(a)(1), (a)(2).

Congress's illustrative examples within the PLCAA further support this position. 15 U.S.C. §§7903(5)(A)(iii)(I), (A)(iii)(II). "The general language . . . providing that predicate statutes are those 'applicable to' the sale or marketing of firearms . . . is followed by the more specific language referring to statutes imposing record-keeping requirements on the firearms industry, 15 U.S.C. §7903(5)(A)(iii)(I), and statutes prohibiting firearms suppliers from conspiring with or aiding and abetting others in selling firearms directly to prohibited purchasers, 15 U.S.C. §7903(5)(A)(iii)(II)." *Beretta*, 524 F.3d at 402. Thus, under basic principles of interpretation, the general "applicable to" language must be "'construed to embrace only objects similar to those enumerated by'" the two specific examples that follow. *Id.* (quoting *Washington State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 384 (2003)).

Further, reading A1765 as being applicable to the sale or marketing of the product would directly conflict with the intention of Congress. "In the construction of statutes, it is the duty of the court to ascertain the clear intention of the legislature." *U.S. v. Fisk.*, 70 U.S. 445, 447 (1865). Congress's intent here is clear. The PLCAA's purpose is to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended." 15 U.S.C. § 7901 (b)(1). A1765 does just the opposite. To read A1765 as fitting within the predicate exception would run afoul of the goals of the PLCAA and would, in fact, "gut the PLCAA" as NSSF suggests.

A1765 would subject manufacturers, distributors, dealers, and importers of firearms or ammunition products and their trade associations to civil liability for the harm solely caused by the criminal or unlawful misuse of firearm or ammunition products by others. This is in direct

conflict with the PLCAA's purpose. Accordingly, the Court finds that NSSF is likely to succeed on the merits that A1765 does not fall within the predicate exception of the PLCAA and is therefore preempted by the PLCAA.[2]

The Court additionally has concerns as to whether A1765 can survive on Constitutional grounds. However, because the Court finds NSSF is likely to succeed on the merits of its preemption argument, the Court need not address the Constitutional issues at this time.[3]

### B. IRREPARABLE INJURY

Having shown a likelihood of success on the merits of the preemption claim, NSSF must also show that it will be irreparably injured by a denial of the preliminary injunction. When it comes to the second factor, irreparable harm, "[t]he law ... is clear in this Circuit: in order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (internal quotation marks and citation omitted). Additionally, "[t]he 'requisite feared injury or harm must be irreparable–not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Id.* at 91–92 (quoting *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)).

NSSF first asserts that the process of trying to ascertain what the vague terms of A1765 mean and what steps industry members could try and take to avoid being found in violation of A1765 will be considerable and unrecoverable given the State's the Eleventh Amendment

---

[2] Because the Court finds that it is likely that NSSF will succeed on the merits that A1765 does "apply to" the sale or marketing of a firearm product, it does not reach a determination on the "proximate cause" requirement issue.
[3] The Court reaches no decision as to whether Plaintiff will ultimately succeed on the merits. The instant application only requires the Court to consider the *likelihood* of NSSF's success.

14

protections. (Moving Br. at 24.) NSSF argues that A1765 permits the Attorney General to bring a civil action for any kind of relief if he suspects a violation of the statute and all indications are that he intends to use that authority. (*Id.*) Because the PLCAA indicates that lawsuits may not be brought in any Federal or State court, no court can make NSSF members whole for having to defend against suits that should have never been brought in the first place. (*Id.* at 25.) Accordingly, NSSF maintains that this constitutes irreparable injury. (*Id.*) NSSF also argues that the cost of the potential lawsuits brought under A1765 are enough to bankrupt the industry. (*Id.*)

In opposition, Defendant asserts that NSSF has not established irreparable harm. (Opp'n Br. at 6.) Rather, Defendant maintains that ordinary costs to comply with a government regulation, as is the case here, do not establish irreparable harm to obtain a preliminary injunction. (*Id.* at 7.) Further, Defendant argues that NSSF's four-and-a-half-month delay in seeking relief demonstrates that its harm is not irreparable. (*Id.* at 7–8.)

In reply, NSSF argues the "significant chilling effect A1765 has on constitutionally protected, truthful speech, plus the loss of immunity from suit" is sufficient to establish irreparable injury. (Reply Br. at 9.) NSSF asserts that its members remain under constant threat that the Attorney General will initiate suit without prior notice, which poses a risk of irreparable harm. (*Id.* at 9–10.)

Amici assert that NSSF's "hyperbolic assertions regarding the financial impact of A1765 are vastly overstated and contradicted by publicly available information." (Amici Br. at 17.) Amici insist that gun industry actors have faced litigation across the country, consistent with the PLCAA, and have not generated mass bankruptcies across the industry. (*Id.* at 17–18.) Amici argue that NSSF offers no evidence to suggest that A1765 claims asserted by Defendant would post any greater threat to the industry's current financial stability. (*Id.* at 19.)

Akin to the instant matter, the plaintiffs in *New Jersey Retail Merch. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 382 (3d Cir. 2012) similarly considered a challenge to the constitutionality of an unclaimed property statute. The plaintiffs there objected to a New Jersey statute and filed motions for a preliminary injunction to prevent the state from enforcing it. *Id.* at 385. They argued that it violated the Supremacy Clause by including a "place-of-purchase presumption." *Id.* at 382, 385. The district court granted, and the Third Circuit affirmed, their requests to preliminarily enjoin the prospective enforcement of the statute's place-of-purchase presumption and the regulatory guidance elaborating on that presumption, concluding that the plaintiff-companies would suffer irreparable harm absent a preliminary injunction. *Id.* at 384-85, 388, 395-96. In finding irreparable harm, the Third Circuit reasoned that plaintiff-companies "must either face prosecution and fines for noncompliance or turn over, in cash, the remaining value of existing gift cards that have not been redeemed within two years[,]" *i.e.*, the amount presumed abandoned under the statute, and that "[t]hey would not be entitled to receive those funds back if [the challenged statute was] later found to be unconstitutional, due to state sovereign immunity." *Id.* at 388; *see also id.* at 396.

That dilemma and the resulting inability to later demand a refund were premised on the prospect of New Jersey's enforcement of the challenged statute. *Id.* at 388 ("If the State enforces Chapter 25, plaintiff-companies must either face prosecution and fines for noncompliance or turn over, in cash, the remaining value of existing gift cards that have not been redeemed within two years."). The plaintiff-companies were, therefore, irreparably harmed because they faced the prospect of either (1) complying with the statute, resulting in the loss of money it could not later obtain, due to sovereign immunity, if the statute was deemed unconstitutional, or (2) being assessed fines and penalties upon future enforcement for noncompliance. *Id.* Here, the existence

16

of irreparable harm is even clearer because enforcement of A1765 is specifically articulated within the statute. A1765 specifically permits the Attorney General to "commence an action to seek and obtain[ ] an injunction prohibiting the gun industry member from continuing that conduct or engaging therein or doing any acts in furtherance thereof[]" if it "appears to the Attorney General that a gun industry member has engaged or is engaging in conduct that violates [the statute][.]" N.J.S.A. 2C:58-35(a)(3)(b). The statute further provides for the creation of an enforcement committee: "The Attorney General may establish or designate within the Department of Law and Public Safety a unit, bureau, office or division to exercise all functions, powers, and duties of the Attorney General established under or deriving from [N.J.S.A. 2C:58-35 *et. seq.*] and which may perform such other functions, powers, and duties vested in the Department of Law and Public Safety as the Attorney General may deem appropriate." N.J.S.A. 2C:58-35(a)(3)(f). As noted above, the Attorney General has created such an office to enforce A1765.

NSSF members are therefore faced with the same dilemma as the plaintiff-companies in *New Jersey Retail*, 669 F.3d at 374; they are required to either comply with the statute, which would result in members being subject to the vague requirement to enforce "reasonable controls regarding its manufacture, sale, distribution, importing, and marketing of gun-related products," N.J.S.A. 2C:58-35(a)(2), or be faced with prosecution and fees upon A1765's enforcement for noncompliance. N.J.S.A. 2C:58-35(b). Should the Court ultimately find A1765 preempted (or unconstitutional), recovering money damages from either complying with A1765 or the fines assessed for noncompliance will be unrecoverable in State or Federal Court under the Eleventh Amendment. *See* U.S. Const. Amend. XI; *see also Royster v. New Jersey State Police*, 227 N.J. 482, 494–495 (2017); *see also Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (finding a "suit by private parties seeking to impose a liability which must be paid from the public funds in the state

treasury is barred by the Eleventh Amendment."). Accordingly, the Court finds that NSSF has satisfied the irreparable harm requirement.

## C. THE POSSIBILITY OF HARM TO OTHER INTERESTED PERSONS

The third factor requires the court to "balance the parties' relative harms; that is, the potential injury to the plaintiffs without this injunction versus the potential injury to the defendant with it in place." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017).

At this stage, a court should also consider "the possibility of harm to other interested persons from the grant or denial of the injunction." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (internal citations and quotations omitted.) "[W]hen considerable injury will result from either the grant or denial of a preliminary injunction, these factors to some extent cancel each other[.]" *Delaware River Port Auth. v. Transamerican Trailer Transp.*, Inc., 501 F.2d 917, 924 (3d Cir. 1974). Granting the instant preliminary injunction has the possibility of harming the State in that it will be unable to enforce its duly enacted statute. *See Abbot v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). The State, however, does not have a legitimate interest in the enforcement of an unconstitutional law. *American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003). Further, Defendants do not present any argument of potential damages that would result in the event the Court issued a preliminary injunction. Accordingly, having found NSSF has made a sufficient showing as to the likelihood of its success on the merits as to its Supremacy Clause challenge, the Court finds this factor to weigh in favor of the injunction.

## D. PUBLIC INTEREST

Finally, the Court must weigh whether the public interest favors the suspension of Defendant's policy pending the outcome of this litigation. "As a practical matter, if a plaintiff demonstrates both likelihood of success on the merits and irreparable injury, it almost always will

18

be the case that the public interest will favor the plaintiff." *American Tel. & Telegraph Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).

In addition, the Third Circuit has recognized that "[i]n the absence of legitimate countervailing concerns, the public interest clearly favors the protection of constitutional rights[.]" *Council for Alt. Pol. Parties v. Hooks*, 121 F.3d 876, 883–84 (3d Cir. 1997). Here, Defendant asserts only broad public safety concerns. The Court is mindful that firearms are inherently dangerous and even more so in the wrong hands, but it is also mindful that the PLCAA embodies Congress's earnest effort to balance those dangers against the national interest in protecting access to firearms. Under the circumstances, the Court is therefore compelled to find that Defendant fails to show legitimate countervailing concerns and that the public interest favors granting Plaintiff's motion for a preliminary injunction.

### E.  RULE 65(C)

The Court additionally notes that neither party addresses the implications on this Motion of Fed. R. Civ. P. 65(c). Pursuant to Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *NCAA v. Governor of N.J.*, 939 F.3d 597, 603 (3d Cir. 2019). The amount of security required for an injunction left to the discretion of the trial judge. *Scanvec Amiable Ltd. v. Chang*, 80 F. App'x 171, 178 (3d Cir. 2003).

The Third Circuit recognizes that public-interest cases may represent an exception to the strict requirements of Rule 65(c). *Temple Univ. v. White*, 941 F.2d 201, 218 n.25 (3d Cir. 1991) (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 803 n.8 (3d Cir. 1989)). As Defendant did not request a bond requirement and did not present any evidence about potential

damages in the event this Court issued a preliminary injunction, the Court will grant the Motion without requiring the posting of a bond by Plaintiff.

## V.  CONCLUSION

Accordingly, Plaintiff's Motion for a Preliminary Injunction will be GRANTED. An appropriate order will follow.

Date: **January 31, 2023**

_____
ZAHID N. QURAISHI
UNITED STATES DISTRICT JUDGE