**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| National Shooting Sports Foundation,<br><br>　　　　　*Plaintiff*,<br><br>　　　　　v.<br><br>Matthew Platkin,<br>Attorney General of New Jersey,<br><br>　　　　　*Defendant*. | No. 3:22-cv-06646-ZNQ-TJB<br><br>**Return Date: 3/6/23** |

**RESPONSE BRIEF IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................................................ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................... 3

I.    The AG's Merits Arguments Are No Better This Time Around ......................... 4

    A.    The AG's Stay Brief Itself Confirms that Article III Is Satisfied........................... 4

    B.    The AG's Preemption Arguments Are No More Persuasive Now ......................... 6

    C.    In Addition to Being Preempted, A1765 Is Unconstitutional ............................... 15

        1.    A1765 violates the First Amendment and is void for vagueness.............. 15

        2.    A1765 violates the Second Amendment .................................................... 18

        3.    A1765 violates the Commerce Clause ....................................................... 19

II.   The AG's Irreparable Injury Arguments Are Fundamentally Confused ........................... 21

    A.    This Court Correctly Concluded that NSSF Established Irreparable
        Injury............................................................................................................. 21

    B.    The AG's Arguments for His Own Irreparable Injury Absent a Stay
        Pending Appeal Ultimately Confirm the Need for the Injunction ....................... 23

III.  This Court Has Already Corrected Accounted For The Public Interest........................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Abbassi v. I.N.S.*,
143 F.3d 513 (9th Cir. 1998) ................................................................. 23

*Abramski v. United States*,
573 U.S. 169 (2014) ............................................................................... 7

*Acierno v. New Castle Cnty.*,
40 F.3d 645 (3d Cir. 1994) ..................................................................... 3

*Ams. for Prosperity Found. v. Bonta*,
141 S.Ct. 2373 (2021) ........................................................................... 16

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ......................................................................... 8, 12

*Baldwin v. G.A.F. Seelig, Inc.*,
294 U.S. 511 (1935) ............................................................................. 20

*Bank of Am. Corp. v. City of Miami*,
137 S.Ct. 1296 (2017) ........................................................................... 10

*Brown v. Entm't Merchants Ass'n*,
564 U.S. 786 (2011) ............................................................................. 16

*Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*,
476 U.S. 573 (1986) ............................................................................. 20

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
273 F.3d 536 (3d Cir. 2001) ................................................................. 18

*City of New York v. Beretta USA Corp.*,
524 F.3d 384 (2d. Cir. 2008) ............................................................... 12

*Comm. on the Judiciary of the U.S. House of Representatives v. Miers*,
575 F.Supp.2d 201 (D.D.C. 2008) ....................................................... 22

*Ctr. for Investigative Reporting v. Se. Penn. Transp. Auth.*,
975 F.3d 300 (3d Cir. 2020) ................................................................. 25

*Daniels Sharpsmart, Inc. v. Smith*,
889 F.3d 608 (9th Cir. 2018) ............................................................... 20

*Dolan v. U.S. Postal Serv.*,
546 U.S. 481 (2006) ............................................................................... 7

*Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*,
  830 F.App'x 377 (3d Cir. 2020) ............................................................................ 3

*Drummond v. Robinson Twp.*,
  9 F.4th 217, 224 (3d Cir. 2021) ........................................................................... 19

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ............................................................................... 19

*Felmeister v. Office of Att'y Ethics*,
  856 F.2d 529 (3d Cir. 1988) .................................................................................. 4

*Frein v. Pa. State Police*,
  47 F.4th 247 (3d Cir. 2022) ................................................................................. 23

*FTC v. Equitable Res., Inc.*,
  2007 WL 1500046 (W.D. Pa. May 21, 2007) ........................................................ 3

*Greater Phila. Chamber of Com. v. City of Phila.*,
  949 F.3d 116 (3d Cir. 2020) ................................................................................ 16

*Grosjean v. Am. Press Co., Inc.*,
  297 U.S. 233 (1936) ............................................................................................. 19

*Hazardous Waste Treatment Council v. South Carolina*,
  945 F.2d 781 (4th Cir. 1991) ............................................................................... 25

*Healy v. Beer Inst*,
  491 U.S. 324 (1989) ............................................................................................. 19

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ............................................................................................... 3

*Holmes v. Secs. Inv. Prot. Corp.*,
  503 U.S. 258 (1992) ............................................................................................. 10

*Ileto v. Glock, Inc.*,
  421 F.Supp.2d 1274 (C.D. Cal. 2006) ................................................................. 21

*Ileto v. Glock, Inc.*,
  565 F.3d 1126 (9th Cir. 2009) ....................................................................... 12, 22

*In re Academy*,
  625 S.W.3d 19 (Tex. 2021) ............................................................................ 21, 22

*Jam v. Int'l Fin. Corp.*,
  139 S.Ct. 759 (2019) ........................................................................................... 10

*Johnson v. United States*,
  576 U.S. 591 (2015) ............................................................................................. 18

*Koons v. Reynolds*,
    2023 WL 128882 (D.N.J. Jan. 9, 2023) ............................................................. 18

*Legato Vapors, LLC v. Cook*,
    847 F.3d 825 (7th Cir. 2017) ............................................................................ 20

*Luis v. United States*,
    578 U.S. 5 (2016) ............................................................................................ 19

*Lupian v. Joseph Cory Holdings LLC*,
    905 F.3d 127 (3d Cir. 2018) ............................................................................ 13

*McSurely v. McClellan*,
    697 F.2d 309 (D.C. Cir. 1982) ........................................................................ 22

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ........................................................................................... 5

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996) ......................................................................................... 13

*Midland Asphalt Corp. v. United States*,
    489 U.S. 794 (1989) ......................................................................................... 21

*Minneapolis Star Trib. Co. v. Commissioner*,
    460 U.S. 575 (1983) ......................................................................................... 19

*Morales v. Trans World Airlines*,
    504 U.S. 374 (1992) ......................................................................................... 23

*N.J. Bankers Ass'n v. Attorney General*,
    49 F.4th 849 (3d Cir. 2022) ............................................................................... 5

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
    142 S.Ct. 2111 (2022) ...................................................................................... 18

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ............................................................................ 18

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................ 2, 3, 5, 23

*NSSF v. James*,
    604 F.Supp.3d 48 (N.D.N.Y. 2022) ................................................................. 12

*Packwood v. Senate Select Comm. on Ethics*,
    510 U.S. 1319 (1994) .......................................................................................... 3

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ............................................................................................... 7

iv

*Pennsylvania v. Navient Corp.*,
    967 F.3d 273 (3d Cir. 2020) ........................................................................ 13

*Puerto Rico v. Franklin Cal. Tax-Free Trust*,
    579 U.S. 115 (2016) ..................................................................................... 13

*Ramsay v. Nat'l Bd. of Med. Examiners*,
    968 F.3d 251 (3d Cir. 2020) ........................................................................ 24

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
    141 S.Ct. 63 (2020) ..................................................................................... 23

*Ruckelshaus v. Monsanto Co.*,
    463 U.S. 1315 (1983) ..................................................................................... 3

*Sherwin-Williams v. County of Delaware*,
    968 F.3d 264 (3d Cir. 2020) ................................................................... 6, 22

*Shuker v. Smith & Nephew, PLC*,
    885 F.3d 760 (3d Cir. 2018) ........................................................................ 13

*Stilp v. Contino*,
    613 F.3d 405 (3d Cir. 2010) ........................................................................ 22

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .................................................................................. 4, 5

*Thornhill v. Alabama*,
    310 U.S. 88 (1940) ...................................................................................... 17

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) .......................................................................... 19

*United States v. Oakland Cannabis Buyers' Co-op.*,
    532 U.S. 483 (2001) ..................................................................................... 24

*United States v. Williams*,
    553 U.S. 285 (2008) .............................................................................. 17, 18

*Williams v. Zbaraz*,
    442 U.S. 1309 (1979) ..................................................................................... 3

*Winston-Salem/Forsyth Cnty. Bd. of Ed. v. Scott*,
    404 U.S. 1221 (1971) ..................................................................................... 3

**Constitutional Provision**

U.S. Const. art. VI, cl. 3 ................................................................................ 19

**Statutes**

15 U.S.C. §7901 .................................................................................... *passim*

15 U.S.C. §7902 ...................................................................................... 7

15 U.S.C. §7903 ............................................................................. 7, 8, 10

N.J. Stat. Ann. §2C:39-10 ...................................................................... 15

N.J. Stat. Ann. §2C:58-33 ...................................................................... 16

N.J. Stat. Ann. §2C:58-34 ......................................................... 10, 15, 17, 20

N.J. Stat. Ann. §2C:58-35 .................................................................. *passim*

**Other Authorities**

Antonin Scalia & Bryan A. Garner,
    *Reading Law: The Interpretation of Legal Texts* (2012) ........................ 7

*Black's Law Dictionary* (11th ed. 2019) ................................................ 10

Office of the Att'y Gen., Press Release, *Acting AG Platkin Launches
    New Office to Enforce New Jersey's New Firearms Safety Legislation*
    (July 25, 2022), https://bit.ly/3ZgAM3a ...................................... 6, 18

Opening Br. for Pls., *Ileto v. RSR Mgmt. Corp.*,
    Nos. 06-56872, 07-15403, 07-15404 (9th Cir. Sept. 25, 2007) ............... 13

**INTRODUCTION**

Attorney General Platkin spends most of his request for a stay pending appeal rehashing arguments this Court has already correctly rejected.  He tries to portray this Court's decision as some kind of outlier, but he neglects to mention that this Court is only the second in history to confront the strained argument that a state can circumvent the Protection of Lawful Commerce in Arms Act through the simple expedient of codifying in a statute that applies only to the firearms industry the same novel common-law theories that the PLCAA was enacted to foreclose.  And far from conflicting with other decisions addressing comparable efforts circumvent the PLCAA, this Court's decision is entirely in keeping with the Second and Ninth Circuits' conclusions that the predicate exception cannot be read to cover statutes that simply codify common-law doctrines, lest the exception swallow the PLCAA's rule that causes of action based on such theories cannot be brought.  The AG is thus forced to resort to arguing that even if A1765 is preempted in the main, perhaps there is some conceivable application of the statute that would not run afoul of the PLCAA.  But the AG fails to identify any suit that could actually be brought under A1765 against an NSSF member consistent with the predicate exception, which is the lone exception on which he chose to defend the law.  The AG's overbreadth arguments thus succeed only in illustrating that even he is not entirely sure how industry members can avoid running afoul of A1765's amorphous commands.  NSSF's members should not have to operate under that Sword of Damocles while the AG pursues his appeal, especially when the whole point of the PLCAA is to grant firearms industry members substantive immunity from exactly these kinds of suits.

The AG's motion is also largely self-defeating.  The AG renews his misguided argument that "there is not yet any Article III case or controversy," asserting that it is purely "hypothetical" whether he will file any "future public nuisance suit" under A1765.  Stay.Br.16-17.  That argument has always been legally confused and factually challenged, for the reasons NSSF explained in its

reply brief (Dkt.16) and this Court acknowledged in its Opinion—including that "the Attorney General has created an entirely new office with the specific mandate of bringing civil enforcement actions under A1765" and has never disavowed his intention to bring civil actions covered by the PLCAA against NSSF's members under the law.  Op.6.  But the argument is particularly odd now. To demonstrate that a stay pending appeal is warranted, the AG must show, *inter alia*, that he "will be irreparably injured absent a stay."  *Nken v. Holder*, 556 U.S. 418, 434 (2009).  Putting aside the fact that enjoining a preempted statute causes public officials no legally cognizable injury, the injunction could not cause the AG to suffer irreparable injury while his appeal is pending unless he plans to sue NSSF members under A1765 *during the pendency of the appeal*.  And if that is indeed his plan, then his ripeness and standing arguments are even more obviously wrong.

Making matters worse, the AG ignores NSSF's constitutional claims entirely, even though NSSF's preliminary injunction motion also argued that A1765 violates the First, Second, and Fourteenth Amendments, as well as the Commerce Clause.  To be sure, this Court did "not reach the Constitutional" claims given its preemption holding.  Op.6 n.1.  But the Court made clear that it "has concerns as to whether A1765 can survive on Constitutional grounds," Op.14, and those concerns cannot be ignored when the AG is asking this Court to set aside the very relief that obviated the need to address them.  That the AG would rather not talk about those claims is understandable; he has already forfeited any argument that A1765's sweeping speech restrictions can satisfy heightened scrutiny (it cannot) or that the novel liability A1765 imposes is consistent with our nation's tradition of firearms regulation (it is not).  But this Court has no such luxury when it is being asked to undo relief that will protect NSSF and its members from constitutional injury while the AG pursues his appeal.  That is all the more reason why the AG's stay motion should be denied.

## ARGUMENT

At the outset, the AG misstates the governing standard.  The AG claims that his "burden is not 'particularly heavy.'"  Stay.Br.5 (quoting *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994)).  That could not be further from the truth.  A party seeking a stay pending appeal bears an "especially heavy" burden to prove that such relief is warranted.  *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1320 (1994) (Rehnquist, C.J., in chambers).  That makes sense, as a stay pending appeal of a "decision granting equitable relief" (such as this Court's Opinion) "interrupts [the] ordinary process of judicial review and postpones relief for [the] prevailing party." *FTC v. Equitable Res., Inc.*, 2007 WL 1500046, at *1 (W.D. Pa. May 21, 2007).  What the AG is asking for here is thus even more "extraordinary" than the typical injunction.  *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979) (Stevens, J., in chambers); *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1316 (1983) (Blackmun, J., in chambers).  Reflecting this, the standard the AG must satisfy is exceptionally demanding.  "For a stay … pending appeal, the movant must show" on the front end not only "(1) a 'strong' likelihood of success on the merits," but also "(2) irreparable injury absent a stay."  *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F.App'x 377, 389 (3d Cir. 2020) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  Only if the movant can satisfy those two "most important" factors, *Nken*, 556 U.S. at 434, will the court then consider "the balance of equities" and "the public interest."  *Trump for President*, 830 F.App'x at 389.  And only if all four factors weigh strongly in favor of a stay is that extraordinary relief warranted.

The AG cannot shoulder "the heavy burden for making out a case for such extraordinary relief."  *Winston-Salem/Forsyth Cnty. Bd. of Ed. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers).  As this Court explained in its Opinion, the AG is unlikely to succeed on the merits. This Court thus need not consider any of the other factors.  In all events, each of the remaining factors confirms that a stay pending appeal is unwarranted.

I.      **The AG's Merits Arguments Are No Better This Time Around.**

    A.      **The AG's Stay Brief Itself Confirms that Article III Is Satisfied.**

While the AG claims that he can make a "strong showing" that Article III jurisdiction is lacking, Stay.Br.16, he notably does not have enough confidence in that threshold argument to lead with it.  In fact, this Court got it entirely correct when it rejected the AG's standing and ripeness arguments.  *See* Op.4-6.  And, if anything, the analysis is even more straightforward now that the AG has confirmed that his plans to start suing NSSF's members are sufficiently concrete and imminent to necessitate asking this Court for the extraordinary remedy of a stay pending appeal.

"A threat of prosecution under an allegedly unconstitutional statute" satisfies the injury-in-fact requirement when [1] the plaintiff has "'an intention to engage in a course of conduct arguably affected with a constitutional interest,'" [2] "'the intended conduct [is] arguably proscribed by the statute that the plaintiff seeks to challenge,'" and [3] the "'threat of future enforcement'" is not "'wholly speculative.'"  Op.4 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160-61 (2014)).  All three factors are plainly satisfied here.  Indeed, the AG does not even contest the first factor, and his arguments on the second and third are inconsistent with the law and the facts.

On the second factor, the AG invokes 35-year-old dictum for the proposition that challenges to state laws are unripe "until it is shown that plaintiffs wish to engage in an activity that would be prohibited."  Stay.Br.19 (quoting *Felmeister v. Office of Att'y Ethics*, 856 F.2d 529, 537 (3d Cir. 1988)).  But that dictum is irreconcilable with more recent precedent—which may explain why the AG does not even cite, let alone discuss, the standard this Court is bound to apply.  In the AG's telling, plaintiffs must show that their intended conduct "*would be* prohibited" by the law they seek to challenge.  Stay.Br.19 (emphasis added).  In reality, as this Court correctly noted in the Opinion, plaintiffs must show only that their intended conduct is "'*arguably* … proscribed by [the] statute' [they] seek to challenge."  *N.J. Bankers Ass'n v. Attorney General*, 49 F.4th 849,

855 (3d Cir. 2022) (emphasis added; alterations in original) (quoting *Susan B. Anthony List*, 573 U.S. at 162). And as the Third Circuit recently explained, "[a]rguably proscribed is not a stringent test. In *Susan B. Anthony List*, the Supreme Court deemed it sufficient that a statute appeared broad enough to cover the intended conduct." *Id.*; *see Susan B. Anthony List*, 573 U.S. at 162.

A1765 is "broad enough" and then some. As NSSF argued previously—and the AG pointedly does not deny—A1765 reaches, among other things, non-misleading advertising about lawful and constitutionally protected products, as well as commercial firearms activity that is not unlawful anywhere. *See* Stay.Br.18 (conceding that "industry members[]" can be subjected to "liability" under A1765 for conduct that is not "unlawful"); Br. in Opp'n to Mot. for a Prelim. Inj. ("AG.PI.Br.") at 37 n.12 (same); AG.PI.Br.37 n.13 (conceding that industry members can be held liable under A1765 for "truthful, non-misleading speech" about lawful products). Under *Susan B. Anthony List*, it is not NSSF's burden to guess which truthful marketing or lawful practices the AG will decide are "unreasonable under all the circumstances." *See* N.J. Stat. Ann. §2C:58-35(a)(1). Nor must NSSF plead its members into criminal or civil liability, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)—particularly given that the law it is challenging "sweeps broadly," *Susan B. Anthony List*, 573 U.S. at 163.

The third *Susan B. Anthony List* factor—whether NSSF's members face a real threat of future enforcement under A1765, *see N.J. Bankers Ass'n*, 49 F.4th at 856—is thus where the rubber meets the road. Yet the AG's arguments on that front have only gotten *less* persuasive since the Court issued the Opinion two weeks ago. As noted, a party seeking a stay pending appeal must show that he "will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434. And the only way a state officer could suffer irreparable injury during the pendency of an appeal from an order enjoining a state statute is if the officer *planned to sue the plaintiff or its members under that*

*statute during the appeal*.  That explains why the only "irreparable injury" the AG claims is being unable to "effectuat[e]"—i.e., bring suits under—A1765 while the appeal is pending.  *See* Stay.Br.23.  The AG cannot have it both ways.  If his plans to sue NSSF's are sufficiently concrete and imminent to warrant seeking a stay, then they are sufficiently concrete and imminent to give NSSF and its members standing to sue.

As this Court already correctly recognized, nothing in *Sherwin-Williams v. County of Delaware*, 968 F.3d 264 (3d Cir. 2020), undermines that conclusion.  The AG asserts that the only "basis" "[t]his Court offered … to distinguish *Sherwin-Williams*," which held that a plaintiff that brought a blunderbuss challenge to potential future common-law suits could not show a sufficient threat of imminent injury, was "that *Sherwin-Williams* involved hypothetical enforcement of the common law public nuisance, as opposed to hypothetical enforcement of a statute."  Stay.Br.18.  In fact, this Court carefully explained that, here, unlike in *Sherwin-Williams*, "the Attorney General has created an entirely new office with the specific mandate of bringing civil enforcement actions under A1765," and "appears intent to do just that."  Op.6; *see* Office of the Att'y Gen., Press Release, *Acting AG Platkin Launches New Office to Enforce New Jersey's New Firearms Safety Legislation* (July 25, 2022), https://bit.ly/3ZgAM3a.  And while the AG contends that the possibility of an action under A1765 "remain[s] too speculative for an Article III case or controversy," Stay.Br.22 n.3, the AG nowhere denies that he intends to bring just such actions.  Nor could he; as explained, if the AG does *not* intend to sue one or more NSSF members under A1765 during the pendency of the appeal, then he has no claim to irreparable injury.  That suffices to confirm that NSSF's members "face[] a substantial threat of future enforcement under A1765."  Op.6.  Article III is satisfied, as this Court already correctly concluded.

**B.    The AG's Preemption Arguments Are No More Persuasive Now.**

Under the PLCAA, "civil actions" against members of the firearm industry brought to

redress harms resulting from third parties' misuse of a firearm "may not be brought."  15 U.S.C. §§7902(a), 7903(5)(A).  The AG does not deny that A1765 creates civil actions that fit that bill. Instead, he renews his contention that A1765 suits fit within the so-called predicate exception, §7903(5)(A)(iii).  According to the AG, because the predicate exception says (in part) that civil actions are saved if they are based on an alleged "'violat[ion of] a … statute *applicable to* the sale or marketing of [a gun-related] product,'" and A1765 "*expressly* applies to sales and marketing by gun industry members," the predicate exception "fits [A1765] hand in glove."  Stay.Br.6-7 (quoting 15 U.S.C. §7903(5)(A)(iii)).  That wooden reading of the statute is no better today than it was when the Court rejected it two weeks ago.

As this Court explained, "both the specific and broader context in which 'applicable to' is used" in the predicate exception confirm that the phrase cannot be read to save statutes like A1765. Op.12.  The AG (once again) declines to engage with all that context, instead insisting that the Court should simply look to the dictionary definition of "applicable" and call it a day.  But as the Supreme Court has long made clear, "we must not be guided by a single sentence or member of a sentence," and instead must "look to the provisions of the whole law."  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981).  In statutory interpretation, the meaning "of a word or phrase depends upon reading the whole statutory text."  *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).  That is not a matter of "writ[ing] new words into duly enacted federal law."  Stay.Br.9. It is simply a matter of faithfully interpreting the words Congress wrote.  *See Abramski v. United States*, 573 U.S. 169, 179 n.6 (2014) (rejecting the charge that "look[ing] at [a] word's function within the broader statutory context" is akin to "rest[ing] on mere 'purpose-based arguments'"). "[A] court should not interpret each word in a statute with blinders on."  *Id.*; *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 16 (2012).

As this Court correctly concluded, the *whole* text makes clear that the predicate exception cannot be construed to save exactly the kinds of civil actions that Congress enacted the PLCAA to inter just because the actions are codified by a state legislature.  *See* Op.12-14; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011) (rejecting reading of savings clause in federal statute that would effectively "destroy" statute's fundamental preemptive purpose).  After all, Congress did not leave anyone guessing as to what it was trying to accomplish in the PLCAA.  The statute says right on its face that its "purpose[]" is "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."  15 U.S.C. §7901(b)(1).  The AG's claim that the PLCAA authorizes reinstatement of exactly such suits thus must be met with the greatest of skepticism and confirmed only by the plainest of text.  Yet all the AG offers is a reading that is at odds with text, context, and case law and would allow the predicate exception to swallow the PLCAA whole.

Start with the text of the predicate exception itself.  The words "applicable to" do not stand alone; they are part of a provision that "exempts only those civil actions that require proof that the actor *knowingly* violated the relevant statute."  Op.12.  That presupposes the kind of concrete obligation or prohibition that one can "knowingly violate."  Unsurprisingly, that is exactly what the predicate exception's two illustrative examples involve—violations of clear legal obligations or prohibitions.  *See* 15 U.S.C. §7903(5)(A)(iii)(I)-(II).  The AG resists that conclusion, providing a variety of examples of statutes that purportedly "impose liability for knowingly breaching a more general duty of care."  Stay.Br.10-11.  But the AG's examples just prove the point, as they *do* involve concrete and specific obligations—e.g., do not sell a firearm to someone you have

reasonable cause to believe is prohibited from possessing it; do not provide alcohol to a visibly intoxicated person if you know they are likely to drive.  A1765, by contrast, essentially just commands that the lawful commerce in arms protected by the PLCAA be conducted "reasonably," without any guidance as to what is "reasonable" other than to make clear that complying with all governing law is not good enough.  *See* N.J. Stat. Ann. §2C:58-35(a)(1) ("A gun industry member shall not, by conduct *either* unlawful in itself *or* unreasonable under all the circumstances…." (emphasis added)).  A1765 thus allows liability to be imposed on "an industry member … who complies with all laws but did not know that it … conducted its lawful business in a manner so 'unreasonable under all the circumstances' that it can be said to have "contribute[d] to'" a so-called public nuisance.  Op.12.  That "is contrary to the PLCAA."  Op.12.

The AG protests that "the PLCAA does not require the predicate statute to include a knowledge component."  Stay.Br.11.  That misses the point.  As this Court correctly recognized, the "knowingly" requirement informs what kinds of statutes the predicate exception covers—namely, those that impose "a sufficiently concrete duty to have knowingly violated."  Op.12.  It is therefore irrelevant that the first prong of A1765 allows liability for "knowingly or recklessly … contribut[ing] to a public nuisance," N.J. Stat. Ann. §2C:58-35(a)(1), as that does not change the fact that the statute fails to impose the kind of obligation the predicate exception requires.  That problem will persist regardless of whether a particular lawsuit alleges that an industry member contributed to a public nuisance "knowingly" or "recklessly."  Moreover, the AG ignores that the second prong of the statute contains no *mens rea* requirement at all; it permits industry members to be held liable simply for failing to "establish, implement, and enforce reasonable controls regarding its manufacture, sale, distribution, importing, and marketing of gun-related products." *Id.* §2C:58-35(a)(2).  There is no squaring that with a knowing violation requirement.

9

Making matters worse, A1765 does not require proximate causation in the ordinary sense. The predicate exception requires the conduct that violates the underlying statute to be "a proximate cause of the harm" for which redress is sought.  15 U.S.C. §7903(5)(A)(iii).  New Jersey tried to write around that command by declaring that remote sales and marketing practices, perhaps decades and thousands of miles removed from the ultimate harm, "shall be deemed to constitute a proximate cause" of harms caused by the criminal misuse of firearms any time such harm was "reasonably foreseeable."  N.J. Stat. Ann. §§2C:58-34, 2C:58-35(e).  But in requiring "proximate cause," Congress did not mean "whatever a state defines to be proximate cause, no matter how attenuated"; it meant "to incorporate the well-settled meaning of the common-law term[] it use[d]." *Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 769-70 (2019).  And, under the common law, "foreseeability alone is not sufficient to establish proximate cause." *Bank of Am. Corp. v. City of Miami*, 137 S.Ct. 1296, 1305 (2017).  Rather, there must be a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).

A1765 explicitly discards any such inquiry.  In fact, A1765 expressly inverts the common-law rule that Congress incorporated into the PLCAA, as evidenced by A1765's use of the word "deemed"—a word of forced equivalence, *see* "Deem," *Black's Law Dictionary* (11th ed. 2019) ("To treat something as if (1) it were really something else, or (2) it has qualities that it does not have").  The AG does not mention this conflict between A1765's expansive causation regime and the PLCAA, perhaps because this Court did not rely on it, *see* Op.14 n.2.  But the AG cannot deny that A1765's expansive causation regime is precisely the kind of non-"bona fide expansion of the common law," lacking "foundation in hundreds of years of the common law and jurisprudence of the United States," that the PLCAA forecloses.  15 U.S.C. §7901(a)(7).  By deploying a novel

variant of "proximate cause" that is designed to facilitate the very sort of novel liability theories that the PLCAA was enacted to inter, A1765 once again contravenes the PLCAA.

Finally, the AG continues to have no answer for the problem that his reading of the predicate exception would let it swallow the PLCAA whole.  The best he can offer is a half-hearted argument that A1765 is consistent with the PLCAA's enumerated findings and purposes because it purportedly "targets bad-apple industry members' *own misconduct*."  Stay.Br.13.  But that is exactly the argument that underlay all the public-nuisance litigation that Congress enacted the PLCAA to foreclose.  While some states may disagree, in Congress' estimation, those engaged in "the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products … are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended."  15 U.S.C. §7901(a)(5).  That judgment does not evaporate just because New Jersey has now codified its contrary view into a statute.

The AG tries to brush aside Congress' enumerated findings and purposes, clinging to the postulate that "general senses of a law's intent cannot overcome the plain text Congress employed."  Stay.Br.13.  Fair enough, but no one is taking about "general senses of a law's intent."  Congress codified its designs in the text for all to see, and its goal was "[t]o prohibit causes of action"—not just common-law causes of action, but *all* causes of action—"against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."  15 U.S.C. §7901(a)(7).  The words of the predicate exception must be construed in a manner that takes account of what Congress explicitly said it was trying to accomplish, as an "act cannot be held to

destroy itself." *Concepcion*, 563 U.S. at 343.  Any reading of the predicate exception that resuscitates the exact same litigation that Congress declared "an abuse of the legal system," 15 U.S.C. §7901(a)(6), is therefore a non-starter.

The very cases on which the AG relies recognized exactly that.  While the AG makes much of the fact that courts have not had held that the predicate exception covers state public-nuisance laws that apply only to the firearms industry, that is only because this Court is just the second one to confront such a novelty.  The first and only court to answer that question was the district court in *NSSF v. James*, 604 F.Supp.3d 48 (N.D.N.Y. 2022), a case that is now on appeal to the Second Circuit.  The more relevant point is that both courts of appeals to address the issue have squarely held that the PLCAA preempts application of generally applicable public-nuisance statutes to the firearms industry.  And they reached that conclusion for largely the same reasons this Court held that the PLCAA preempts A1765:  because "the text and purpose of the PLCAA shows that Congress intended to preempt general tort theories of liability even in jurisdictions … that have codified such causes of action." *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1136 (9th Cir. 2009).  Indeed, to read the predicate exception as allowing suits based on the same amorphous common-law theories just because a state enshrines those theories in its statutory code "would allow the predicate exception to swallow the" PLCAA's rule that state efforts to impose liability on industry members "for harm caused by firearms that were lawfully distributed" are "preempt[ed]." *City of New York v. Beretta USA Corp.*, 524 F.3d 384 (2d. Cir. 2008).  Far from helping the AG's cause, then, the decisions of other circuits just reinforce the conclusion that the Third Circuit is every bit as unlikely as the Second and Ninth to give the words "applicable to" the kind of wooden meaning the AG continues to press.

As a last-ditch effort to convince the Court to reverse itself, the AG resorts to "the

presumption against preemption." Stay.Br.14. But the AG misunderstands what the presumption is all about. The presumption is based on a simple idea: "Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). The presumption thus has no role to play in the context of a statute that was enacted for the specific (and textually confirmed) purpose of preempting state-law causes of action.[1] That explains why the AG does not cite a single case relying on the presumption in the context of the PLCAA. That is not for lack of trying; litigations have pressed the argument—and they have failed. *See, e.g.*, Opening Br. for Pls. 10, *Ileto v. RSR Mgmt. Corp.*, Nos. 06-56872, 07-15403, 07-15404 (9th Cir. Sept. 25, 2007) (unsuccessfully arguing that "[n]othing in the PLCAA evidences a clear intent by Congress that would defeat the strong presumption against preemption of subjects within the historic police powers of the states"). In all events, the presumption is just about legislative intent, and here all signs point in the same direction. To "discern[] congressional intent," which "is the ultimate touchstone" "[i]n every preemption case," "we look to the 'structure and purpose of the statute as a whole, as revealed not only in the text, but through the … way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers, and the law.'" *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 288 (3d Cir. 2020) (quoting *Medtronic*, 518 U.S. at 486). And for the reasons already explained, text, structure, and purpose all confirm that Congress intended to (and did) preempt exactly the sort of civil actions that A1765 revives.

---

[1] The Supreme Court has held that the presumption against preemption provides no grounds to narrow the sweep of express preemption provisions. *See, e.g.*, *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 124-25 (2016). In contrast to the Fifth, Eighth, and Tenth Circuits, the Third Circuit has declined to extend *Franklin* outside the bankruptcy context. *See Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 131 n.5 (3d Cir. 2018) (applying presumption in FAAAA case); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 771 n.9 (3d Cir. 2018) (applying presumption in FDCA case). To the extent the presumption matters in this case—which should be zero, for the reasons explained above—NSSF reserves the right to argue that the Third Circuit's presumption caselaw is inconsistent with Supreme Court precedent and wrong on the merits.

\*     \*     \*

The AG argues in the alternative that even if this Court is correct about preemption (which it is), it should narrow the injunction to clarify that the AG may bring certain suits under A1765 against NSSF members that he maintains would not conflict with the PLCAA.  But the AG fails to identify any suit that could be brought under A1765 against an NSSF member that the predicate exception would save.  For instance, while he complains that the injunction prevents him from "enforc[ing] Section 58-35" in a case based on "negligent entrustment or negligence per se," Stay.Br.15, he elsewhere admits that the predicate exception exempts only suits that require a "knowing[] violat[ion]," Stay.Br.6.  That likewise dooms the AG's arguments that the injunction should be stayed as to "reckless straw sales to prohibited purchasers" and "faulty record-keeping," Stay.Br.16, as those theories do not require *knowing* violations of the law either.  The AG also suggests that some suits under A1765 could be saved by *other* PLCAA exception, Stay.Br.15, but that argument is forfeited because the AG has never invoked any exception other the predicate exception until now.  Nor did the AG argue in his preliminary injunction briefing that he might bring lawsuits under A1765 that involve "no third-party misconduct," Stay.Br.16, or that he has any reason to think that NSSF members are manufacturing or selling firearms without the requisite federal license.  Indeed, even now, the AG offers precious little reason to think that there is any *actual* suit he would bring against an NSSF member that is not preempted.

In all events, even if there may be some actions that could be brought under A1765 that would not be preempted by the PLCAA, that alone would not justify narrowing the injunction pending appeal, as A1765 also violates the Constitution in multiple respects.  *See* Part I.C., *infra*.  To allow the AG to enforce A1765 against an NSSF member while this case is pending would therefore inflict serious harm, chilling constitutionally protected speech and interfering with the

14

legitimate regulatory regimes of other states.  Against that backdrop, the fact that the government can already bring *criminal charges* for knowing "straw sales to prohibited purchasers" and "misconduct by non-federally licensed actors," Stay.Br.16; *see, e.g.*, N.J. Stat. Ann. §2C:39-10, confirms that whatever harm the AG fears an injunction limited to A1765 will cause is illusory.

### C.     In Addition to Being Preempted, A1765 Is Unconstitutional.

The AG faces long odds when it comes to persuading the Third Circuit to disagree with this Court's conclusion that NSSF is likely to succeed on its preemption claim.  That suffices to defeat the present motion.  But it is far from the only reason why A1765 should remain enjoined.  In addition to depriving NSSF's members of the substantive federal immunity from suit that the PLCAA confers upon them, in violation of the Supremacy Clause, A1765 violates multiple other constitutional provisions.  While this Court declined to address those issues in its Opinion, it expressed "concerns as to whether A1765 can survive on Constitutional grounds," Op.14, and the Court would have to take those concerns into consideration before staying the relief that obviated the need to resolve all of those issues at the threshold.

### 1.     A1765 violates the First Amendment and is void for vagueness.

A1765 authorizes sweeping liability for "contribut[ing] to" a public nuisance "through … marketing" and for failing to use "reasonable controls regarding … marketing."  N.J. Stat. Ann. §2C:58-35(a)(1), (a)(2).  The statute does not apply to all marketing, however; only "marketing of a gun-related product," *id.*, and only marketing done by a "gun industry member" who manufactures, sells, or markets firearms and related products, *id.* §2C:58-34, fall within its ambit.  On its face, then, A1765 imposes textbook speaker-, content-, and viewpoint-based restrictions on speech.  The statute's marketing restrictions apply only to firearm industry members (speaker), only to marketing about firearm products (content), and only to materials promoting firearms (viewpoint).  New Jersey thus must affirmatively prove that A1765 satisfies strict scrutiny—or, at

the very least, "something more than intermediate scrutiny." *Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 139 (3d Cir. 2020) ("[S]omething more than intermediate scrutiny" is required for commercial speech restrictions that single out "some messages or some speakers based on the content of the speech or the identity of the speaker.").  Yet, in his earlier briefing, the AG forfeited any argument that A1765 can satisfy anything more than intermediate scrutiny.

In all events, no matter which version of heightened scrutiny applies, A1765 flunks it. "Where exacting scrutiny applies, the challenged requirement must be narrowly tailored to the interest it promotes, even if it is not the least restrictive means of achieving that end." *Ams. for Prosperity Found. v. Bonta*, 141 S.Ct. 2373, 2384 (2021).  But far from being narrowly tailored, A1765 is both "wildly underinclusive" and "vastly overinclusive." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 801-02, 804 (2011).  Despite ostensibly being motivated by a desire to resolve a purported "epidemic of gun violence," N.J. Stat. Ann. §2C:58-33, A1765 does nothing to police the conduct of criminals who misuse firearms to perpetrate that problem and endanger public health and safety.  Nor does it regulate vast swathes of speech that may actually encourage criminal gun violence.  That is the definition of underinclusive. *See Brown*, 564 U.S. at 804.  A1765 is also fatally overbroad.  The statute authorizes the imposition of liability for speech about a product *even when that speech is truthful*—as the AG has admitted.  It also confers carte blanche to sue industry members for marketing lawful (and constitutionally protected) products in ways he deems insufficiently attentive to the dangers that firearms inherently pose.  Indeed, to be grounds for liability under A1765, the marketing does not even have to have led to the purchase of the firearm used to perpetrate crimes.  That is a recipe for pervasive, but verboten, viewpoint discrimination.

It also confirms that A1765 is unconstitutionally vague.  It should go without saying that a statute that required a specific, disfavored subset of speakers to "speak reasonably" or else face

16

crippling liability would be invalidated as unconstitutional.  A1765 is no different.  By its terms, A1765 renders unlawful any marketing that could be said to have "recklessly" "contribute[d] to a public nuisance," N.J. Stat. Ann. §2C:58-35(a)(1), and it defines "public nuisance" so broadly as to sweep in, e.g., truthful marketing that "contributes to the injury or endangerment of the health, safety, peace, comfort, or convenience of others" or is not subject to sufficiently "reasonable procedures, safeguards, and business practices," *id.* §2C:58-34.  Any advertisement for a lawful product anywhere can be grounds for liability if it is later deemed by a New Jersey factfinder to have (1) been unreasonable and (2) indirectly contributed to misuse of firearms in New Jersey. But under our constitutional framework, the state does not get decide, after the fact, whether speech was reasonable.  Unless commercial speech is false or inconsistent with traditional, clear, and ex ante restrictions on speech, the First Amendment fully protects it, even if others might deem the speech "unreasonable."  And the threat of discriminatory enforcement is all the more pervasive when, as here, a law "does not aim specifically at evils within the allowable area of State control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or of the press."  *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940).  That inherent vagueness dooms A1765 under the First Amendment as well.

For many of the reasons that A1765 is unconstitutionally vague with respect to speech protected by the First Amendment, it is also unconstitutionally vague under the Due Process Clause with respect to all other conduct it polices.  "What renders [this] statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008).  A1765 fails to articulate any cognizable standard whatsoever. Determining, for example, what promotes (or disserves) the public convenience invites "wholly

subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.*  Indeed, A1765 is "so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  That would be problematic enough in any context. When not one, but two, fundamental constitutional rights are concerned, such pervasive vagueness is anathema.  *Cf. N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015).

### 2.    A1765 violates the Second Amendment.

The AG has bragged that A1765 targets "legal[] firearms."  July 25 Press Release, *supra*. By the AG's own admission, then, A1765 applies to conduct covered by "the Second Amendment's plain text."  *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111, 2129-30 (2022).  New Jersey must therefore "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  *Id.* at 2130.  The AG could not satisfy that burden even if he tried.  *See* 15 U.S.C. §7901(a)(7) ("The liability actions [that led to the PLCAA's enactment] are based on theories without foundation in hundreds of years of … jurisprudence of the United States and [if allowed to move forward] would constitute a deprivation of the rights, privileges, and immunities guaranteed to a citizen of the United States under the Fourteenth Amendment to the United States Constitution."); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540-41 (3d Cir. 2001) ("To extend public nuisance law to embrace the manufacture of handguns would be unprecedented under New Jersey state law and unprecedented nationwide for an appellate court.").  Perhaps that is why he has not tried:  In his prior briefing, the AG made no argument that, if the Second Amendment applies, A1765 does not violate it.[2]

---

[2] That forfeiture is doubly problematic.  Under *Bruen*, a state may pass only those laws that are "consistent with this Nation's historical tradition of firearm regulation."  142 S.Ct. at 2126.  That means a state has an obligation to determine whether a law is consistent with historical tradition *before* it enacts it.  *See Koons v. Reynolds*, 2023 WL 128882, at *8 (D.N.J. Jan. 9, 2023) ("Surely, Defendants had—or should have had—the historical materials and analyses the State relied upon

Of course the Second Amendment applies.  "Commercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment."  *United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010); *see also Drummond v. Robinson Twp.*, 9 F.4th 217, 224, 226-28 (3d Cir. 2021); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011).  After all, one cannot "keep" or "bear" arms if one cannot acquire them in the first place.  And long-settled Supreme Court precedent holds that a state may not evade a constitutional right by attacking the means by which it is exercised.  *See, e.g.*, *Grosjean v. Am. Press Co., Inc.*, 297 U.S. 233, 250-51 (1936).  "Constitutional rights thus implicitly protect those closely related acts necessary to their exercise."  *Luis v. United States*, 578 U.S. 5, 26-27 (2016) (Thomas, J., concurring).  Just as it cannot evade the Press Clause by targeting the commercial sale of ink and paper, *Minneapolis Star Trib. Co. v. Commissioner*, 460 U.S. 575, 592-93 (1983), New Jersey cannot evade the Second Amendment by imposing novel burdens on "acts necessary to the[] exercise" of the rights it protects—with none more essential than the act of acquiring arms in the first place.

### 3.    A1765 violates the Commerce Clause.

Finally, A1765 regulates conduct that occurs wholly outside the state.  The AG has never denied that NSSF members could be held liable under A1765 for contributing to an in-state "nuisance" based on their sales, marketing, or manufacturing that took place wholly out of state.  *See* AG.PI.Br.31 & n.8.  Nor could he, given the statute's clear text.  *See* N.J. Stat. Ann. §2C:58-35(a)(1).  A1765 is thus unconstitutional, because a state law that imposes liability for transactions that take place out of state is "per se invalid" to that extent, even if the regulated commerce "has effects within the State."  *Healy v. Beer Inst*, 491 U.S. 324, 335-36 (1989).

---

when it began its legislative response to Bruen.").  After all, state legislatures are just as bound as state officers and state courts to abide by the U.S. Constitution.  *See* U.S. Const. art. VI, cl. 3 ("[T]he Members of the several State Legislatures, and all executive and judicial Officers … of the several States, shall be bound by Oath or Affirmation, to support this Constitution[.]").

The AG has previously suggested that A1765 is triggered only when a firearm is unlawfully used or possessed in New Jersey. Even if that is right, it makes no difference. For one thing, the firearm or related product that ties back to the industry member need not have been "sold, manufactured, distributed, imported, or marketed" in New Jersey, or even "intended to be." N.J. Stat. Ann. §2C:58-34. A manufacturer or seller can be liable under A1765 for recklessly contributing to a public nuisance in New Jersey even if all of its "s[ales], manufactur[ing], … [and] marketing" took place entirely out of state and were fully lawful where they occurred, if a New Jersey court later finds that it was "reasonably foreseeable that the product would be possessed or used in this State." *Id.* For another thing, the "mere fact that" a state law is "triggered only by" in-state effects "does not validate the law if it regulates … out-of-state transactions," *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 580 (1986), and that is true even if the goods made or sold in a regulated out-of-state transaction are specifically intended to be resold in the regulating state, *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511, 521 (1935).

Nor is that A1765's only Commerce Clause problem; its command to employ "reasonable controls" is not limited to activities in New Jersey either. *See* N.J. Stat. Ann. §§2C:58-34, 2C:58-35(a)(2). Under that provision, A1765 could be deployed to impose liability on a manufacturer operating entirely in Texas and a retailer operating entirely in Arkansas, among others with no connection to New Jersey. Making matters worse, A1765 authorizes New Jersey courts to *enjoin* practices that violate its terms even if they occur entirely out of state and are lawful where they occur. *See id.* §2C:58-35(b). That is as extraterritorial as it gets. *See, e.g.*, *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 612-16 (9th Cir. 2018); *Legato Vapors, LLC v. Cook*, 847 F.3d 825 (7th Cir. 2017). Indeed, imposing state-law liability for actions taken entirely outside of the regulating state's borders is the definition of unconstitutional extraterritorial state regulation.

## II.   The AG's Irreparable Injury Arguments Are Fundamentally Confused.

### A.   This Court Correctly Concluded that NSSF Established Irreparable Injury.

The AG argues that, merits aside, NSSF is not entitled to a preliminary injunction because it has not established irreparable harm.  But, once again, the AG misrepresents (or outright ignores) NSSF's arguments, which confirm that this Court's irreparable-injury conclusion was correct.

According to the AG, NSSF's entire claim to irreparable injury "reli[es] on conclusory compliance costs or hypothetical litigation costs."  Stay.Br.19.  That blinks reality.  Putting aside for the moment that NSSF has brought constitutional claims (including a meritorious claim under the First Amendment), NSSF has argued at every turn that loss of immunity, not the mere expense and annoyance of litigating an A1765 case, would be irreparable harm.  The AG does not even acknowledge those arguments, let alone dispute them.  Nor could he.

First, it is beyond dispute that the PLCAA confers a substantive immunity on licensed manufacturers and sellers of firearms, including NSSF's members.  "Congress's choice of language in section 7902(a)" of the PLCAA confirms that it meant to (and did) confer on members of the firearms industry a substantive immunity from suit.  *In re Academy*, 625 S.W.3d 19, 33 (Tex. 2021).  "Congress did *not* say that 'no liability may be imposed in a qualified civil liability action' or that 'a manufacturer or seller of a qualified product may not be held liable in a qualified civil liability action'; it said that such an action 'may not be brought in any Federal or State court.'"  *Id.* "[T]his distinction was purposeful, as Congress elsewhere has distinguished between a prohibition against bringing a suit or claim and a prohibition against imposing liability."  *Id.* (citing examples). The PLCAA's unequivocal language is thus not just a defense against liability; it is "an explicit statutory … guarantee that trial will not occur."  *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989); *see, e.g.*, *Ileto v. Glock, Inc.*, 421 F.Supp.2d 1274, 1283 (C.D. Cal. 2006) (interpreting the PLCAA as "provid[ing] immunity to firearms manufacturers and dealers from

21

any lawsuit, pending or otherwise, fitting the Act's definition of a 'qualified civil liability action'"), *aff'd*, 565 F.3d at 1142 (holding that "the PLCAA … creates a substantive rule of law granting immunity to certain parties against certain types of claims"); *In re Academy*, 625 S.W.3d at 34.

Second, even a temporary deprivation of such an immunity from suit constitutes irreparable harm as a matter of law.  Just as "compelling a public official to proceed to trial before the merits of an immunity defense are determined will generally constitute irreparable injury … because of the irretrievable loss of immunity from suit," *McSurely v. McClellan*, 697 F.2d 309, 317 n.13 (D.C. Cir. 1982), allowing the AG to bring qualified civil liability actions against licensed manufacturers or sellers of firearms or related products—i.e., forcing NSSF members to "fac[e] such a[n]" action under A1765 and try to "raise [the PLCAA] as a defense" (Stay.Br.28)—would defeat the whole purpose of the substantive immunity the PLCAA confers upon them.  The immunity the PLCAA grants "entails immunity from the entire *process* of litigation: lengthy (and costly) pre-trial discovery, depositions, and ultimately trial itself, as well as any damages." *Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, 575 F.Supp.2d 201, 205 (D.D.C. 2008).  Under black-letter law, even a temporary loss of that immunity "constitute[s] irreparable injury." *Id.*  That suffices to distinguish *Sherwin-Williams*.  Because there is no analogue to the PLCAA for lead-paint companies, the plaintiff in *Sherwin-Williams* had no substantive immunity from suit that it could claim.  Any injury from a future lawsuit in *Sherwin-Williams* instead hinged on what each "County might allege" and whether it "will prevail."  968 F.3d at 270.  Not so here.

On top of that, NSSF has also brought constitutional claims—and the constitutional injuries A1765 is inflicting on NSSF and its members are sufficiently irreparable in and of themselves to justify injunctive relief, especially given the significant chilling effect A1765 has on constitutionally protected speech. *See Stilp v. Contino*, 613 F.3d 405, 409 (3d Cir. 2010).  Indeed,

the ever-present threat of being subjected to a civil enforcement action leaves NSSF members little choice but to steer clear of A1765's broad ambit, which countenances liability even for truthful speech about lawful products.  And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67-68 (2020) (per curiam); *see also Morales v. Trans World Airlines*, 504 U.S. 374, 381 (1992) (irreparable harm results from the enforcement of a state law that violates the Supremacy Clause).  It therefore makes no difference that NSSF members have not yet pulled out of New Jersey altogether.  "Even if the government has not entirely prevented citizens from speaking …, its burdens on speech … [still] may violate the First Amendment." *Frein v. Pa. State Police*, 47 F.4th 247, 254 (3d Cir. 2022).

In short, the AG's efforts to undermine this Court's irreparable-injury conclusion fail.  Even without its constitutional claims, NSSF has shown irreparable injury.

### B.    The AG's Arguments for His Own Irreparable Injury Absent a Stay Pending Appeal Ultimately Confirm the Need for the Injunction.

To be entitled to a stay pending appeal, a movant must show, *inter alia*, that he "will be irreparably injured absent a stay."  *Nken*, 556 U.S. at 434.  "[S]imply showing some 'possibility of irreparable injury,' fails to satisfy th[is] … factor."  *Id.* at 434-35 (quoting *Abbassi v. I.N.S.*, 143 F.3d 513, 514 (9th Cir. 1998).  This Court's injunction could cause the AG to suffer irreparable injury while his appeal is pending only if the AG planned to sue NSSF members under A1765 *during the pendency of the appeal*.  That explains why the only putative "irreparable injury" the AG invokes is being unable to "effectuat[e]"—i.e., enforce—A1765 while the appeal is pending. *See* Stay.Br.23.  And it not only confirms that NSSF has satisfied Article III, as explained above, but underscores the propriety of this Court's decision to enter a preliminary injunction.

The AG's protestations do not move the needle.  Indeed, the AG *still* has "not present[ed]

any argument of potential damages that w[ill] result" if the injunction remains in place.   Op.18. To be sure, the AG insists that the Court's injunction prevents him from *using A1765* to go after "extreme misconduct by particular bad-apples in the industry."   Stay.Br.27.   But the AG does not deny that there are already ample tools under both state and federal law to punish the various "bad-apples" he highlights.   *See* Stay.Br.23-28.   Indeed, most of the examples the AG provides of a case he cannot bring *under A1765* because of the injunction are cases where law enforcement successfully held bad actors accountable for their bad acts without resorting to a novel public-nuisance statute.   Against that background, the AG's claims to irreparable injury fall flat.

### III.    This Court Has Already Corrected Accounted For The Public Interest.

In its preliminary injunction Opinion, the Court was not blind to the stakes.   On the contrary, the Court made clear that it was "mindful that firearms are inherently dangerous and even more so in the wrong hands."  Op.19.   NSSF and its members are equally mindful of those realities. But as this Court went on to explain, those are not the only concerns in the balance.   "[T]he PLCAA embodies Congress's earnest effort to balance those dangers against the national interest in protecting access to firearms."  Op.19.   In that context, the Court correctly "f[ound] that Defendant fails to show legitimate countervailing concerns" despite the "broad public safety concerns" the state has outlined.  Op.19.   Nothing in the AG's stay brief calls for a different result.

What is mote, the public interest does not favor keeping in place a statute that poses such a grave threat to fundamental constitutional rights.   And A1765 encroaches on federal authority by flouting Congress' express purposes in passing the PLCAA, *see, e.g.*, *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497-98 (2001) (public interest favored injunction where state law conflicted with "Congress's policy choice, articulated in a statute"); *Ramsay v. Nat'l Bd. of Med. Examiners*, 968 F.3d 251, 263 (3d Cir. 2020) (same); foments interstate conflict by setting New Jersey up as the judge of lawful business practices in other states, *see, e.g.*, *Hazardous Waste*

*Treatment Council v. South Carolina*, 945 F.2d 781, 795 (4th Cir. 1991) (public interest favored injunction where state law burdened interstate commerce); and tramples on individual rights—the right to keep and bear arms, the freedom of speech, the privilege of pursuing a common calling, and more, *see, e.g.*, *Ctr. for Investigative Reporting v. Se. Penn. Transp. Auth.*, 975 F.3d 300, 317 (3d Cir. 2020) (public interest favored injunction where law burdened constitutional rights).

## CONCLUSION

For the reasons set forth and above, this Court should deny the AG's motion.

Respectfully submitted,

<u>/s/ Jonathan M. Preziosi</u>
JONATHAN M. PREZIOSI
BRIAN C. DEENEY
LEWIS BRISBOIS BIS GARRD
   & SMITH LLP
1037 Raymond Boulevard
Suite 800
Newark, NJ 07102
(979) 792-8736
jonathan.preziosi@lewisbrisbois.com
brian.deeney@lewisbrisbois.com

PAUL D. CLEMENT[*]
ERIN E. MURPHY[*]
MATTHEW D. ROWEN[*]
NICHOLAS M. GALLAGHER[*]
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

[*] admitted *pro hac vice*

*Counsel for Plaintiff*

February 14, 2023