

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO Box 116
TRENTON, NJ 08625-0116

MATTHEW J. PLATKIN
*Attorney General*

MICHAEL T.G. LONG
*Director*

February 16, 2023

**VIA ECF**

Hon. Zahid N. Quraishi, U.S.D.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:   *Nat'l Shooting Sports Foundation v. Matthew J. Platkin*,
               Docket No. 3:22-cv-06646-ZNQ-TJB

Dear Judge Quraishi:

    Please accept this letter brief in support of the State's Motion for a Stay Pending Appeal. *See* Dkt. 18. The State and NSSF agreed to expedited briefing for this motion, and the State is submitting this reply early. The State thus asks this Court to rule on the motion swiftly to enable a prompt application for a stay in the Third Circuit if a stay is not granted by this Court. Because the Court is already well aware of the parties' positions, the State highlights a few final points.

    **1.** NSSF has no compelling response to the core points establishing the State's likelihood of success on appeal.

    As to standing and irreparable harm, NSSF offers no clarity on what "intended conduct" it fears is proscribed by Section 58-35, *see* Dkt. 27 ("Stay Opp.") at 4, or any other basis for establishing Article III jurisdiction or irreparable harm. *Compare* Dkt. 25-1 ("Stay Br.") at 16-23, *with* Stay Opp. at 4-6. Instead, it continues to ground its pre-enforcement facial challenge in the nebulous assertions that its members sell or market guns, Section 58-35 applies to the sale and marketing of guns, and Section



58-35 may someday be enforced against someone for something because the State has an enforcement office. *See Sherwin-Williams Co. v. County of Delaware, Pa.*, 968 F.3d 264, 266-67, 270-72 (3d Cir. 2020). The State already explained why *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374 (3d Cir. 2012)—the main case on which this Court's opinion relied, *see* Dkt. 17 ("Op.") at 16-18—offers no basis for finding irreparable harm on the facts here, and the opposition does not rehabilitate or even mention that case.

On PLCAA, NSSF offers no basis to distinguish every single other judicial opinion—majority, concurrence, and dissent—to have construed the meaning of the words "applicable to" in PLCAA's predicate exception, 15 U.S.C. § 7903(5)(A)(iii). *See* Stay Opp. at 7-12. The definitions expressly provided in those opinions are all inconsistent with NSSF's applicable-means-concrete theory. *See* Stay Br. at 6-10. NSSF seeks to avoid the plain meaning of the phrase by protesting that "this Court is just the second one to confront" a gun-related public-nuisance *statute*. Stay Opp. at 12. But all the other judges had to construe the same words in PLCAA, and nothing about the actual meaning of "applicable to" changes based on the cause of action. NSSF strains in forcing this distinction, protesting that Section 58-35 is one of only two laws to be ruled upon "that *apply* only to the firearms industry," Stay Opp. at 12 (emphasis added), while simultaneously arguing that Section 58-35 is not "applicable to" the sale or marketing of firearms, *see id.* NSSF's opposition thus confirms what "applicable" plainly means in ordinary use.

Without a textual foothold, NSSF is left to argue against consulting dictionary definitions and in favor of inchoate assertions of "purpose." *See* Stay Opp. at 7-8. In doing so, it ignores the well-established principle that "vague notions of a statute's 'basic purpose'" are "inadequate to overcome the words of its text regarding the specific issue under consideration." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993). And in any event, as NSSF admits, PLCAA sought "[t]o prohibit causes of action" against industry members "for the harm *solely* caused by the criminal or unlawful misuse of" guns or ammunition. Stay Opp. at 11 (quoting 15 U.S.C. § 7901(b)(1)). NSSF later tries to suggest Congress wanted to create blanket immunity for even industry members' *own misconduct*, *see* Stay Opp. at 11, but that is disproven by the statute's plain language and its history, *see* Stay Br. at 13-14. And critically, Section 58-35 does *not* allow an industry member to be held liable "for the harm solely caused by" a third party's wrongdoing—it applies only if an industry member itself engages in misconduct. *Accord* 15 U.S.C. § 7901(b)(1); *see* N.J. Stat. Ann. § 2C:58-35(a)(1)-(2); Stay Br. at 13; Dkt. 11 ("PI Opp.") at 21, 24. So even under NSSF's free-form, purposivist approach to PLCAA, its arguments fail.

Even if the text were a close call, the presumption against preemption would require that the State prevails. *See, e.g.*, Stay Br. at 14. NSSF belatedly contends that

the presumption is inapplicable, Stay Opp. at 12-13, but acknowledges (as it must) that the presumption applies to this case under binding Third Circuit precedent, *see* Stay Opp. at 13 n.1. And under the presumption, NSSF is only entitled to relief if the applicable-means-concrete theory is the *only* plausible reading. NSSF cannot meet that particularly heavy burden.

Finally, on the equities, NSSF offers no answer to why it waited four-and-a-half months to seek injunctive relief, or any tangible reason why it all of a sudden would be irreparably harmed by a stay preserving the status quo (in effect since July 2022) for roughly the same amount of time it delayed. *Compare* Stay Br. at 20-21, 28-29, *with* Stay Opp. at 20-24. It also offers no response to the significant public-safety risks that the State has discussed at length, Stay Br. at 23-28; *see also* Dkt. 25-2 (Decl. of Ravi Ramanathan), besides the unsupported claim that "most of" the State's concerns can be addressed with other laws. Stay Opp. at 24. And contrary to NSSF's conclusory assertion, the Attorney General *does* dispute "that there are already ample tools," *id.*, to hold bad apples accountable. *See* Stay Br. at 28.[1]

**2.** Perhaps most conspicuously, even under its own legal theory, NSSF does *not* argue (and cannot argue) that the scope of this Court's injunction is proper. *See* Stay Opp. at 14. That order enjoined the entire statute. *See* Dkt. 18. To achieve such a sweeping result, NSSF would have had to show that PLCAA preempts all possible applications of Section 58-35. *See, e.g.*, *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 543 (3d Cir. 2017); PI Opp. at 15. NSSF conceded on reply that it did not make that showing, *see* PI Reply at 3 (disclaiming any allegation as to "applications [NSSF] does not challenge"), and even after *receiving* facial relief, it has studiously avoided arguing that anyone other than its "members" is actually entitled to relief. *E.g.*, Stay Opp. at 1, 6, 14, 23. But as the State has detailed, there are numerous non-

---

[1] NSSF also muddies the standard of review, relying prominently (Stay Opp. at 3) on inapposite in-chambers opinions from Supreme Court Justices addressing different postures. *See, e.g.*, *Packwood v. Senate Select Comm. on Ethics*, 510 U.S. 1319, 1320 (1994) (Rehnquist, C.J., in chambers) ("Because this matter is pending before the Court of Appeals, and because the Court of Appeals denied his motion for a stay, applicant has an especially heavy burden."). Here, in asking this Court to stay its own judgment (as well as in simply seeking to preserve the status quo), the State's burden is lighter. And as the governing precedent makes clear, "[w]here the balance of harms and public interest weigh in favor of a stay and the court deems that the stay movant has made a sufficient showing of success on appeal, a stay should be granted." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015); *see also id.* at 571 ("sum[ming] up" the full standard).

Case 3:22-cv-06646-ZNQ-TJB    Document 28    Filed 02/16/23    Page 4 of 6 PageID: 493

Page 4

preempted (and otherwise valid) applications of Section 58-35, even under NSSF's theory. *See* PI Opp. at 16-17; Stay Br. at 15-16; *accord* Stay Opp. at 14.

Unable to argue the substance of the law, NSSF erroneously contends that the State has forfeited the argument that Section 58-35 is, regardless of the predicate exception, not preempted as to any suit that is (1) independent of third-party misconduct; (2) based on a theory of negligent entrustment or negligence per se; or (3) leveled against an entity that is not federally licensed at all. *Compare* Stay Br. at 15-16 (citing express exceptions in PLCAA), *with* Stay Opp. at 14 (arguing only forfeiture). But NSSF is simply wrong: the State made the same point in its preliminary injunction opposition. *See* PI Opp. at 18 n.2 (raising these exact points, noting NSSF's failure to challenge them, and explaining that they provide "further reason that facial invalidation is improper"). In any event, it is procedurally backwards: NSSF, as the plaintiff, sought to meet its burden for an injunction only by focusing on the predicate exception, PI Br. at 5-12, so the State explained why that theory failed. In other words, *NSSF*'s decision not to challenge applications of Section 58-35 that are (1) independent of third-party misconduct; (2) based on negligent entrustment or negligence per se; or (3) leveled against an entity that is not federally licensed at all is the reason why it is at a minimum *not* entitled to this broad of an injunction, not blame to be placed at the State's feet.[2]

NSSF's confusion also reveals the significant gaps in its irreparable-harm arguments. NSSF argues that "[t]his Court's injunction could cause the AG to suffer irreparable injury while his appeal is pending only if the AG planned to sue NSSF members during the pendency of the appeal." Stay Opp. at 23 (emphasis deleted). But under this Court's injunction, the Attorney General also cannot enforce Section 58-35 against entities who are *not* NSSF members. *E.g.*, Stay Br. at 24-25 (examples of unlicensed ghost-gun sellers and gangs). Further, NSSF's argument ignores the mismatch between the massive sweep of the order and the speculative, elusive nature of the harms NSSF is trying to assert: under this Court's existing order, the Attorney General cannot enforce Section 58-35 against even the most glaring misconduct—

---

[2] Tellingly, NSSF has no response at all to the point that the State could permissibly enforce Section 58-35 against an industry member who knowingly engaged in fraudulent or faulty record-keeping or who made sales to straw purchasers despite knowledge or reasonable cause to believe the actual buyer was a prohibited person under 18 U.S.C. § 922(g) or (n)—the two examples expressly provided by the predicate exception. *See* 15 U.S.C. § 7903(5)(A)(iii); *compare also* Stay Br. at 16, 25-26 (making this point and providing examples), *with* Stay Opp. at 14.

even though NSSF has never put forward anything but nebulous hypotheticals about how its members are being impacted.

Finally, while NSSF claims that its speculative fear nevertheless counts as irreparable harm because its members enjoy an "immunity" under PLCAA, Stay Opp. 22, the cases it cites are inapposite. *See, e.g.*, *McSurely v. McClellan*, 697 F.2d 309, 317-18 & n.13 (D.C. Cir. 1982) (explaining why officials are generally allowed to litigate denials of qualified immunity on appeal before being forced to proceed to trial, which is *different* from the ordinary process of raising merits defenses, such as preemption, in litigation). NSSF's effort to distinguish *Sherwin-Williams* is similarly unavailing, as that case recognized that being able to raise substantive protections as defenses is sufficient. *See* 968 F.3d at 270 ("Any injury to Sherwin-Williams's First Amendment or due process rights would not be irreparable. If the County sues, Sherwin-Williams can raise those claims as affirmative defenses in state court.").

**3.** Perhaps aware of the risks it faces on appeal, NSSF spends a substantial portion of its brief arguing on grounds that this Court did not reach. *Compare* Stay Opp. 10-11, 15-20, with Op. at 6-14 & n.2. But those arguments carry little weight where (as here) the parties are arguing only about likelihood of success on appeal. In any event, NSSF says nothing new on this score, and so the State simply reiterates that in addition to not being preempted by PLCAA, Section 58-35 does not run afoul of the dormant Commerce Clause, PI Opp. at 30-33; the statute is not void for vagueness, PI Opp. at 33-35; its marketing provisions are permissible, viewpoint-neutral regulations of commercial speech and are not vague, PI Opp. at 35-39, and the law neither implicates nor violates the Second Amendment, PI Opp. at 39-40.[3]

In short, because "the balance of harms and public interest weigh in favor of a stay" and the State "has made a sufficient showing of success on appeal, a stay should be granted." *In re Revel AC, Inc.*, 802 F.3d 558, 569 (3d Cir. 2015).

---

[3] Here, too, NSSF levels charges of forfeiture or claims or concession, but they again lack merit. *Compare* Stay Opp. at 5 (claiming State has "conced[ed] that industry members can be held liable under A1765 for 'truthful, non-misleading speech' about lawful products"), *with* PI Opp. at 37 n.13 ("In any event, even if the marketing provisions *were* enforced against truthful, misleading…"). *Compare also* Stay Opp. at 18 (claiming that State "made no argument that, if the Second Amendment applies, A1765 does not violate it"), *with* PI Opp. at 39-40 (citing case "surveying historical evidence"; emphasizing *District of Columbia v. Heller*'s statement that "nothing in [its] opinion should be taken to cast doubt on … laws imposing conditions and qualifications on the commercial sale of arms"; and noting that NSSF has "not even allege[d] that Section 58-35 impairs the public's ability to possess firearms").

Respectfully submitted,

MATTHEW J. PLATKIN
ATTORNEY GENERAL OF NEW JERSEY


By:  /s/ Tim Sheehan
Tim Sheehan
Deputy Attorney General


cc:  All counsel (via ECF)