# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NATIONAL SHOOTING SPORTS FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>MATTHEW J. PLATKIN, Attorney General of New Jersey,<br><br>*Defendant*. | No. 3:22-cv-06646-ZNQ-TJB |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO REOPEN THE CASE
AND FOR LEAVE TO AMEND THE COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION AND BACKGROUND ............................................................................... 1

LEGAL STANDARD ................................................................................................................ 4

ARGUMENT .............................................................................................................................. 5

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*31-01 Broadway Assocs., LLC v. Travelers Cas. & Sur. Co.*,
  2019 WL 5061320 (D.N.J. Oct. 10, 2019) ................................................................. 9

*Ahmed v. Dragovich*,
  297 F.3d 201 (3d Cir. 2002) ..................................................................................... 4

*Alvin v. Suzuki*,
  227 F.3d 107 (3d Cir. 2000) ..................................................................................... 4

*Bjorgung v. Whitetail Resort, LP*,
  550 F.3d 263 (3d Cir. 2008) ..................................................................................... 9

*Boden v. Bos. Sci. Corp.*,
  2021 WL 3080413 (D.N.J. July 21, 2021) ................................................................. 4

*Boughner v. Sec'y of Health, Ed. & Welfare, U. S.*,
  572 F.2d 976 (3d Cir. 1978) ............................................................................. 6, 7, 8

*Budget Blinds, Inc. v. White*,
  536 F.3d 244 (3d Cir. 2008) ................................................................................. 4, 6

*Cureton v. NCAA*,
  252 F.3d 267 (3d Cir. 2001) ..................................................................................... 8

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990) ..................................................................................... 8

*Dopico v. IMS Trading Corp.*,
  2016 WL 389984 (D.N.J. Feb. 1, 2016) .................................................................... 4

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................. 4

*Garrett v. Wexford Health*,
  938 F.3d 69 (3d Cir. 2019) ....................................................................................... 4

*Klapprott v. United States*,
  335 U.S. 601 (1949) ................................................................................................. 7

*Lake v. Arnold*,
  232 F.3d 360 (3rd Cir. 2000) .................................................................................... 4

*Langbord v. U.S. Dep't of Treasury*,
  832 F.3d 170 (3d Cir. 2016) .................................................................................. 8, 9

*Mullin v. Balicki*,
    875 F.3d 140 (3d Cir. 2017) .......................................................................................... 8

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*,
    2023 WL 1380388 (D.N.J. Jan. 31, 2023) ............................................................. 1, 2, 7

*Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*,
    80 F.4th 215 (3d Cir. 2023) ................................................................................. 2, 5, 6

*Newark Branch, N.A.A.C.P. v. Millburn Twp.*,
    1990 WL 238747 (D.N.J. Dec. 27, 1990) ................................................................... 7

*Newark Branch, N.A.A.C.P. v. Town of Harrison*,
    907 F.2d 1408 (3d Cir. 1990) ...................................................................................... 7

*Penn W. Assocs., Inc. v. Cohen*,
    371 F.3d 118 (3d Cir. 2004) ........................................................................................ 4

*Reich v. Fairleigh Dickinson Univ.*,
    2022 WL 2384007 (D.N.J. July 1, 2022) .................................................................... 8

*Revell v. Port Auth. of N.Y. & N.J.*,
    321 F.App'x 113 (3d Cir. 2009) .................................................................................. 7

**Statutes**

15 U.S.C. §§7901-03 ............................................................................................................ 1

15 U.S.C. §7903(5)(A) .......................................................................................................... 1

N.J. Stat. Ann. §2C:58-34 ..................................................................................................... 1

N.J. Stat. Ann. §2C:58-35(a)(1) ............................................................................................ 1

**Rules**

Fed. R. Civ. P. 15(a)(2) ......................................................................................................... 9

Fed. R. Civ. P. 60(b)(6) ......................................................................................................... 9

**INTRODUCTION AND BACKGROUND**

Not long ago, the National Shooting Sports Foundation ("NSSF") filed this lawsuit challenging a recently enacted New Jersey "public nuisance" statute specifically designed to evade the judgment of Congress and the Constitution. That statute—Assembly Bill 1765 ("A1765")—radically redefines the tort of "public nuisance" when it comes to members of the firearm industry. Under A1765, the lawful and constitutionally protected "sale, manufacturing, distribution, importing or marketing of a gun-related product" may be deemed to violate New Jersey law and justify the imposition of sweeping liability if a New Jersey judge or jury later finds that such conduct "knowingly or recklessly create[d], maintain[ed], or contribute[d] to" "any condition" that impinges in any way upon "the health, safety, peace, comfort, or convenience of" New Jerseyans. N.J. Stat. Ann. §§2C:58-34, 2C:58-35(a)(1). Thankfully, the Protection of Lawful Commerce in Arms Act, 15 U.S.C. §§7901-03 ("PLCAA") expressly prohibits efforts to impose civil liability on "a manufacturer or seller" of firearms or ammunition based on "the criminal or unlawful misuse of [such products] by … a third party." *Id.* §7903(5)(A). To boot, the Commerce Clause prohibits New Jersey from regulating commerce that takes place beyond its borders; the First Amendment prohibits New Jersey from punishing truthful marketing about lawful products; the Second Amendment protects commerce in arms; and the Due Process Clause prohibits punishing one private party for the conduct of another. All of that means New Jersey's statute cannot stand.

On January 31, 2023, this Court agreed. After NSSF promptly moved for a preliminary injunction, this Court enjoined the Attorney General from enforcing A1765, holding that NSSF had standing to challenge the statute because its members faced a "concrete threat of future enforcement," and that the statute is likely "preempted by the PLCAA." *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 2023 WL 1380388, at *3, *7 (D.N.J. Jan. 31, 2023) (Dkt.17). The Court also expressed "concerns as to whether A1765 can survive" scrutiny under NSSF's other

constitutional claims. *Id.* at *7. And it found that NSSF and its members would suffer irreparable harm without an injunction, and that the balance of harms and the public interest favored an injunction. *Id.* at *7-9.

The Third Circuit subsequently vacated that injunction and ordered the case dismissed, finding that NSSF's members did not face a sufficiently concrete or substantial threat of being sued by the Attorney General for engaging in lawful commerce in arms, or for the unlawful use of their products by third parties. *Nat'l Shooting Sports Found. v. Att'y Gen. of N.J.*, 80 F.4th 215, 217-18 (3d Cir. 2023) (Dkt.32-2). In so holding, however, the panel relied in significant part on the representations of the Attorney General in his appellate briefing and at oral argument, where (unlike when he was before this Court) he expressly "disavowed" any intention to "prosecut[e] [NSSF] or its members just for participating in 'lawful commerce'" and promised that he would file suits under A1765 based only on "industry members' 'own *misconduct*,'" not on the misconduct of third parties outside the control of NSSF or its members. *Id.* at 21 (quoting Oral Arg. at 5:23-35 & NJ AG Br. at 15).

Unfortunately, the Attorney General's promises proved short-lived. Mere months after securing dismissal of this case, he began doing exactly what he assured the Third Circuit he would not do: filing lawsuits against industry members under A1765 for their participation in lawful commerce and seeking to hold them liable for harms caused by the criminal acts of third parties. *See* Complaint, *Platkin v. FSS Armory, Inc.*, No. MRS C-000102-23 (N.J. Super. Ct. Ch. Div. Dec. 12, 2023) (Decl., Ex.1); Amended Complaint, *Platkin v. Patriot Enters. Worldwide LLC*, No. MER-C-000093-23 (N.J. Super. Ct. Ch. Div. Dec. 14, 2023) (Decl., Ex.2); Complaint, *Platkin v. Point Blank Guns and Ammo LLC*, No. MRS-C-000123-24 (N.J. Super. Ct. Ch. Div. Nov. 13, 2024) (Decl., Ex.3). And while NSSF initially hoped that those lawsuits would prove isolated

2

incidents or at least would not reach NSSF's members given the representations he made to the Third Circuit, the Attorney General recently laid to rest any hope that he might abide by his promises when, just before the new year, he brought a sweeping lawsuit seeking to bar the sale of one of the most popular handguns in the country and hold Glock, Inc. ("Glock")—an NSSF member—responsible for the purported "nuisance" of harms caused by third parties who unlawfully convert legal Glock pistols into illegal machineguns. *See* Complaint, *Platkin v. Glock, Inc.*, No. ESX-C-000286-24 (N.J. Super. Ct. Ch. Div. Dec. 12, 2024) (Decl., Ex.4).

The Attorney General's about-face eliminates all doubt that NSSF's members now face a concrete and substantial threat of enforcement. After all, the Attorney General can hardly continue to claim that he has no intention of deploying A1765 to try to hold NSSF members liable for harms caused by the unlawful acts of third parties based on their own participation in lawful commerce in firearms when he is actively doing exactly that right now. NSSF accordingly seeks to reopen its challenge to A1765 and amend its complaint to remedy the standing deficiencies that the Third Circuit identified. *See* NSSF's Proposed Amended Complaint (Decl., Ex.5). There is every reason to grant NSSF's motion, as it would plainly serve the ends of justice to permit NSSF to litigate claims that this Court has already found meritorious now that NSSF plainly has standing to bring them. And there is no reason to deny this motion, as the Attorney General—despite his failure to consent to reopening and amendment—cannot credibly claim to be prejudiced by having to defend against claims that he should have had to defend against two years ago, especially when NSSF could just bring a new lawsuit if leave to reopen and amend were denied. Denying this motion thus would serve only to further delay resolution of NSSF's claims, as it would deprive the parties of the benefit of the judicial economies that come from having a judge who is already familiar with these proceedings. The Court should reopen this case and grant leave to amend so NSSF can

3

finally have a full and fair opportunity to protect its members from having to face the preempted and unconstitutional lawsuits that the Attorney General has now made clear he plans to bring.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b)(6) gives a district court broad discretion to reopen a case for "any … reason that justifies] relief." And under Rule 15(a)(2), courts "should freely give" leave to amend "when justice so requires." "When a party requests post-judgment amendment of a pleading, a court will normally conjoin the Rule 60(b) and Rule 15(a) motions to decide them simultaneously." *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002).[1] While "a party seeking Rule 60(b)(6) relief must demonstrate the existence of 'extraordinary circumstances,'" *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008), a motion for leave to amend under Rule 15 is governed by "liberal standards," *Garrett v. Wexford Health*, 938 F.3d 69, 89 (3d Cir. 2019). So long as "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Accordingly, a district court may deny leave to amend only if the party opposing it carries the heavy burden of showing prejudice, futility, bad faith, or undue delay. *See, e.g.*, *Lake v. Arnold*, 232 F.3d 360, 373-74 (3rd Cir. 2000); *Dopico v. IMS Trading Corp.*, 2016 WL 389984, at *1-2 (D.N.J. Feb. 1, 2016). Absent such concerns, "a motion for leave to amend a pleading should be liberally granted." *Boden v. Bos. Sci. Corp.*, 2021 WL 3080413, at *1 (D.N.J. July 21, 2021) (citing *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000)).

---

[1] The Court administratively closed this case on July 20, 2023. *See* Dkt.31 (requesting Clerk to "ADMINISTRATIVELY TERMINATE this matter pending the resolution of the appeal"). To the extent that administrative order did not constitute formal and final termination of the case, *see Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 120 (3d Cir. 2004), this Court should consider NSSF's motion under Rule 15 alone, *see Ahmed*, 297 F.3d at 207 ("Ordinarily, an order dismissing a complaint without prejudice is not a final order as long as the plaintiff may cure the deficiency and refile the complaint.").

# ARGUMENT

When the Third Circuit ordered this case dismissed for lack of standing, it did so on the premise that NSSF's members did not face "a substantial risk of prosecution just for making, marketing, and selling guns"—because the Attorney General had expressly "disavowed" any intention to "prosecut[e] [NSSF] or its members just for participating in 'lawful commerce'" and promised that he would file suits under A1765 based only on "industry members' 'own *misconduct*,'" not the misconduct of third parties outside NSSF's or its members' control. *NSSF*, 80 F.4th at 221-22 (quoting Oral Arg. at 5:23-35 and NJ AG Br. at 15). Mere months after securing dismissal via those promises, however, the Attorney General began to go back on his word. And things have only gotten worse since.

The Attorney General began by bringing a trio of lawsuits seeking to deploy A1765 to hold industry members liable for lawful commerce and for harms caused by third parties who use their legal products to commit crimes. One suit seeks monetary and punitive damages from FSS Armory, Inc. on the theory that it should be held liable for all injuries owing to a group of criminals who broke into its store and stole 20 firearms, including any and all crimes that may be committed by third parties using those stolen firearms. *See* Decl., Ex.1; *id.* Ex.5, ¶50. Another suit seeks monetary and punitive damages and restitution from two Nevada- and Pennsylvania-based industry members for the lawful sale in Pennsylvania of firearms kits that are illegal in New Jersey, on the theory that those companies are responsible for any harms caused by persons who purchase those kits in Pennsylvania and bring them into New Jersey, convert them into firearms that they are prohibited from possessing, and/or use them to commit crimes in New Jersey. *See* Decl., Ex.2; *id.* Ex.5, ¶51. The third suit seeks to compel Point Blank Gun and Ammo LLC to demand identification from customers who purchase magazines and rifle ammunition—something that neither federal nor New Jersey law requires. *See* Decl., Ex.3; *id.* Ex.5, ¶52. Finally, in the *ne plus*

5

*ultra* of PLCAA-barred suits, the Attorney General filed a lawsuit just before the new year seeking to enjoin NSSF member Glock from selling virtually all models of the most popular handgun in America, and to pay untold sums in abatement, restitution, and disgorgement, because third parties sometimes illegally convert those legal pistols into illegal machineguns and then use them to commit crimes in New Jersey. *See* Decl., Ex.4; *id.* Ex.5, ¶53.

Given those intervening developments, it is plain that NSSF now has the standing that the Third Circuit previously found lacking, as the Attorney General's lawsuits (and the recent Glock lawsuit in particular) prove beyond a doubt that NSSF's members do in fact face "a substantial risk of prosecution just for making, marketing, and selling guns," and of lawsuits under A1765 seeking to hold them liable for the criminal acts of third parties outside their control. *NSSF*, 80 F.4th at 222. After all, the Attorney General can hardly continue to claim that he has no intention of bringing such suits against NSSF members when he is actively prosecuting an NSSF member right now based on nothing other than the act of marketing and selling legal pistols. *See id.* at 220 ("A strong sign of future enforcement is that a law has been enforced against the plaintiff, a closely related party, or others for similar conduct.").

Those intervening developments readily suffice to provide good cause to reopen this case and permit NSSF to amend its complaint to address the standing deficiencies that the Third Circuit identified. Rule 60(b) relief is generally appropriate "when the judgment precluded an adjudication on the merits" and "unexpected" developments have demonstrated that the plaintiff should be able to proceed. *Budget Blinds*, 536 F.3d at 255 (citation and quotation marks omitted). And it is particularly appropriate when, as here, a judgment that "precluded an adjudication on the merits" was procured by the untoward actions of another party or its representative. *Boughner v. Sec'y of Health, Ed. & Welfare, U. S.*, 572 F.2d 976, 979 (3d Cir. 1978). Indeed, to refuse to reopen

this case under these circumstances would be manifestly unjust, as the case was dismissed only because the Attorney General made promises to the Third Circuit that he has since failed to keep, hence paving the way to start bringing in state court the very lawsuits that NSSF brought *this* lawsuit to try to preempt. *See, e.g.*, *id.* at 979 ("A motion under Rule 60(b)(6) should be granted when 'appropriate to accomplish justice.'" (quoting *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949) (opinion of Black, J.)).

Those intervening developments likewise suffice to satisfy the low bar to secure leave to amend. Leave is routinely granted even in run-of-the-mill cases where standing is called into question or found lacking so that plaintiffs may "allege facts sufficient to demonstrate standing." *Revell v. Port Auth. of N.Y. & N.J.*, 321 F.App'x 113, 118 (3d Cir. 2009); *see also, e.g.*, *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 907 F.2d 1408, 1417 (3d Cir. 1990) ("[C]ourts have held that grants for leave to amend complaints should be routinely granted to plaintiffs, even after judgments of dismissal have been entered against them[.]"); *Newark Branch, N.A.A.C.P. v. Millburn Twp.*, 1990 WL 238747, at *5 (D.N.J. Dec. 27, 1990) (holding that "new facts" alleged in an amended complaint "can establish standing"). And this is no run-of-the-mill case. This Court has already concluded that NSSF is likely to succeed on the merits because A1765 is likely "preempted by the PLCAA," and it expressed "concerns as to whether A1765 can survive" scrutiny under NSSF's other constitutional claims. *NSSF*, 2023 WL 1380388, at *7. And NSSF's proposed Amended Complaint demonstrates that it can indeed now "allege facts sufficient to demonstrate standing." *Revell*, 321 F.App'x at 118; *see* Decl., Ex.5 (Proposed Amended Complaint). Adding to all that, the Attorney General secured dismissal only by making promises to the Third Circuit that he has now broken in spades.

7

Because reopening this case and letting NSSF amend its complaint would so plainly "accomplish justice," *Boughner*, 572 F.2d at 979, the Attorney General would need to make a particularly strong showing of prejudice to justify denying that relief. *See, e.g.*, *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017) ("[p]rejudice to the non-moving party is the touchstone for the denial of an amendment"); *Reich v. Fairleigh Dickinson Univ.*, 2022 WL 2384007, at *4 (D.N.J. July 1, 2022) (discussing the non-moving party's burden to show prejudice). Yet the Attorney General cannot show that leave to amend would prejudice him at all. Of course, the Attorney General has made clear to NSSF that he will oppose this motion, but it is difficult to see why. Since this case was dismissed without prejudice and the statute of limitations has not run, there is no question that NSSF could file a new lawsuit against the Attorney General pressing all the same claims, so he cannot claim that "allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001); *see also, e.g.*, *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (showing prejudice "require[s]" a party "to demonstrate that its ability to present its case would be seriously impaired were amendment allowed"). It would simply accomplish the efficiency of permitting NSSF to pursue its claims before a judge who is already familiar with them—which, far from prejudicing anyone, would serve "judicial economy," especially when it is the Attorney General who forestalled resolution of this litigation on the merits the first time around. *See Mullin*, 875 F.3d at 150, 157.

Nor can the Attorney General plausibly claim to be prejudiced by the time that has elapsed between dismissal and this motion. The "mere passage of time 'is an insufficient ground to deny leave to amend'" even in the ordinary case. *Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 188 (3d Cir. 2016) (en banc); *see Mullin*, 875 F.3d at 155 (denial of amendment ten months after

8

complaint was filed based on new information was an abuse of discretion). It is plainly insufficient here. The whole reason the Third Circuit ordered this case dismissed is because it deemed NSSF's suit premature, as it was not yet clear whether the Attorney General would enforce the statute against NSSF's members at all, let alone do so in the manner that NSSF feared he would (and, of course, the Attorney General had promised he would not). So NSSF could not replead until it was confident that the Attorney General had reneged on his promises, which the suit recently filed against Glock finally made clear beyond cavil. *Cf. Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (asking whether "the plaintiff has had previous opportunities to amend" but declined to do so). NSSF thus has not engaged in *any* delay in filing this motion, let alone engaged in "undue" or "bad faith" delay. *Langbord*, 832 F.3d at 188. Indeed, far from seeking "to unnecessarily prolong litigation," *31-01 Broadway Assocs., LLC v. Travelers Cas. & Sur. Co.*, 2019 WL 5061320, at *5 (D.N.J. Oct. 10, 2019), NSSF tried to expeditiously litigate this case two years ago shortly after A1765 was enacted, but was frustrated in its efforts by the Attorney General's apparent lack of candor about how he intended to utilize the new powers the statute gave him.

In short, the Attorney General has plainly broken the promises he made to procure dismissal of this case. It is now plain as day that he intends to enforce A1765 against NSSF's members in exactly the way NSSF has feared all along, as he is actively doing so right now. To keep this case closed and deny leave to amend thus would not further the ends of justice in the slightest. *See* Fed. R. Civ. P. 60(b)(6), 15(a)(2). It would instead serve only to reward the Attorney General for his prosecutorial pirouette.

9

## CONCLUSION

The Court should grant NSSF's motion to reopen and for leave to file its proposed Amended Complaint.

Respectfully submitted,

s/Daniel L. Schmutter
DANIEL L. SCHMUTTER
HARTMAN & WINNICKI, PC
74 Passaic Street
Ridgewood, NJ 07450
(201) 967-8040
dschmutter@hartmanwinnicki.com

PAUL D. CLEMENT
ERIN E. MURPHY
MATTHEW D. ROWEN
NICHOLAS A. AQUART*
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900

*Supervised by principals of the firm who are members of the Virginia Bar. (Application for admission *pro hac vice* forthcoming.)

*Counsel for Plaintiff*

February 6, 2025